[No. S132666. Feb. 26, 2007.]

THE PEOPLE, Plaintiff and Respondent, v.
HORACIO NAVARRO, Defendant and Appellant.

670

COUNSEL

Patricia L. Watkins and William Joseph Arzbaecher III, under appointments by the Supreme Court, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Mary Jo Graves, Assistant Attorney General, Kathleen A. McKenna, Louis M. Vasquez and Brian Alvarez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

MORENO, J.—This court has long recognized that under Penal Code sections 1181, subdivision 6,[1] and 1260, an appellate court that finds that insufficient evidence supports the conviction for a greater offense may, in lieu of granting a new trial, modify the judgment of conviction to reflect a conviction for a lesser included offense. We granted review in this case to determine whether an appellate court may, upon finding insufficient evidence supports the judgment of conviction for *one* greater offense, substitute convictions for *two* lesser included offenses shown by the evidence at trial.

---

[1] Subsequent unspecified references will be to the Penal Code.

We conclude that the statutory provisions at issue do not authorize such a procedure.

## I. FACTS AND PROCEDURAL HISTORY

*A. Defendant's Convictions*

On the evening of March 16, 2002, Kim Mapel was working at a Subway restaurant in Goshen when defendant entered, revealed a gun in his waistband, and demanded money from the cash register. Mapel gave defendant about $200 from the register, whereupon defendant fled. A couple of days after the incident, Mapel was at a gas station near the Subway restaurant when she saw defendant hiding behind one of the pumps. Mapel contacted police, but defendant could not be found.

On the morning of April 2, 2002, Mapel was standing near her vehicle in a parking lot at San Joaquin Valley College where she was a student when defendant approached her and asked why she "rat[ted] on him for having a gun?" Defendant then stated he knew Mapel "had two pretty little girls at home" and that if Mapel "ratted," he would "use a gun" on her. Defendant thereafter ran away and Mapel drove home. Mapel told her boyfriend, Joe Martinez, with whom she lived, about the incident and he telephoned the police. Martinez drove around the neighborhood to see if Mapel had been followed and drove by a white car with four occupants. One of the men yelled out of the window, "What's up?" After Martinez returned home, he and Mapel noticed the same white car drive by their house.

At that point, a Tulare County sheriff's detective responded to Martinez's call and spotted a white Chevy Capri, which matched Martinez's description. The detective activated his car's siren and a vehicle chase ensued. During the pursuit, two of the four vehicle occupants fled on foot. Officers eventually detained three of the occupants, but the fourth person escaped.

Meanwhile, a Plymouth Neon belonging to Lonetta Hogue was stolen from the area. A few minutes later, the Neon merged onto Highway 99 in Goshen and almost struck California Highway Patrol Officer Ryan Duran's patrol vehicle. A high-speed chase ensued, during which the Neon reached speeds of approximately 100 miles per hour. As the Neon attempted to navigate an off-ramp to Route 198, the car careened out of control and crashed. Duran saw the driver exit the Neon and run eastbound onto Route 198.

By this time, California Highway Patrol Officer Roy Frakes had responded to the scene and gave chase. James Petersen, who was driving his pickup truck on Route 198, saw the chase and stopped his vehicle. The suspect, later identified as defendant, entered Petersen's pickup on the passenger's side and stated, "Drive or I'll kill ya." Petersen put the pickup in park, pulled the key out of the ignition, and jumped out. Defendant locked the passenger door, got behind the steering wheel, and attempted to drive the pickup. At this point, Officer Frakes arrived and started to bang on the passenger's side window. Seeing that defendant was unarmed, Petersen returned to the pickup and pulled defendant out with the help of Officer Frakes and another man. Mapel later identified defendant in a field showup as the man who robbed her at the Subway restaurant and the man who accosted her at San Joaquin Valley College.

The jury convicted defendant of attempted kidnapping during the commission of carjacking (Pen. Code, §§ 664, 209.5, subd. (a)) and attempted unlawful driving or taking of a vehicle (Pen. Code, § 664; Veh. Code, § 10851, subd. (a)) with respect to the incident involving victim Petersen. Defendant was also convicted of various other counts related to the Subway robbery, his threats against victim Mapel, and the high-speed chase.[2] The trial court sentenced defendant to a prison term totaling 23 years four months, which included a term of two years four months for attempted kidnapping during the commission of carjacking. (Calculated as one-third the midterm; see Pen. Code, § 1170.1, subd. (a).) Defendant filed a timely notice of appeal.

B. *Proceedings in the Court of Appeal*

As relevant here, defendant claimed on appeal that insufficient evidence supported his conviction for attempted kidnapping during the commission of a carjacking, which was based upon defendant's attempt to drive away Petersen's pickup truck. Defendant argued the offense required a completed carjacking, which in turn required asportation of the vehicle. (See *People v. Lopez* (2003) 31 Cal.4th 1051, 1055–1063 [6 Cal.Rptr.3d 432, 79 P.3d 548]

---

[2] The jury additionally convicted defendant of second degree robbery (Pen. Code, §§ 211, 212.5) with an enhancement for firearm use (*id.*, §§ 12022.5, subd. (a), 12022.53, subd. (b)) and dissuading a witness or victim by threat (*id.*, § 136.1, subd. (c)(1)). Defendant pleaded no contest to charges of unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)), driving with disregard for safety while evading a pursuing officer (Veh. Code, § 2800.2, subd. (a)), receiving stolen property (Pen. Code, § 496, subd. (a)), transporting methamphetamine (Health & Saf. Code, § 11379, subd. (a)), and misdemeanor transporting marijuana (Health & Saf. Code, § 11360, subd. (b)), and admitted an enhancement for being on bail at the time of the offenses (Pen. Code, § 12022.1, subd. (b)). Defendant also pleaded no contest to a charge of possessing a short-barreled shotgun (*id.*, § 12020, subd. (a)(1)) with respect to a prior, unrelated case.

[completed carjacking requires asportation of vehicle].) Since he was unable to move the vehicle, defendant asserted he did not commit a carjacking, and thus, did not commit an attempted kidnapping during the commission of carjacking. (See *People v. Contreras* (1997) 55 Cal.App.4th 760, 763–765 [64 Cal.Rptr.2d 233] [kidnapping during the commission of a carjacking requires a completed carjacking]; see also *People v. Jones* (1999) 75 Cal.App.4th 616, 627, fn. 3 [89 Cal.Rptr.2d 485] [suggesting in dicta that attempted kidnapping during the commission of carjacking would require a completed carjacking].) The Attorney General conceded the issue and the Court of Appeal agreed with defendant that insufficient evidence supported his conviction for attempted kidnapping during the commission of carjacking.

However, the Attorney General urged the Court of Appeal to reduce defendant's conviction to reflect convictions for two lesser included offenses: attempted carjacking (§§ 664, 215, subd. (a)) and attempted simple kidnapping (§§ 664, 207, subd. (a)). The Attorney General argued sections 1181, subdivision 6, and 1260 (see discussion, *post*) authorized the Court of Appeal to so reduce defendant's conviction, since the evidence at trial reflected that defendant had committed both lesser included offenses and the jury's verdict necessarily reflected that the jury had found defendant had committed both lesser included offenses.

In his reply brief, defendant opposed the proposed modification, claiming that the Court of Appeal could at most modify the judgment to reflect a conviction for only attempted carjacking. Defendant noted that section 1181, subdivision 6, allows modification to a "lesser crime" in the singular and that no case had held that a single greater conviction could be modified to reflect multiple convictions for lesser offenses. Defendant also objected to the modification on state double jeopardy and estoppel grounds.

The Court of Appeal agreed with the Attorney General's proposal. Noting that the " 'purpose for allowing an appellate court to modify the judgment to a lesser included offense is to "obviate the necessity of a new trial when the insufficiency of the evidence only goes to the degree of the crime," ' " the Court of Appeal commented that "[a]s long as an appellate court exercises its power to modify a conviction only 'where the evidence would support a conviction of a lesser necessarily included offense, a lesser degree offense or an offense that was charged . . . ,' there is no due process violation. [Citation.]" The Court of Appeal concluded that both attempted carjacking and attempted kidnapping were lesser included offenses of attempted kidnapping during the commission of carjacking and both offenses were supported by substantial evidence at trial.

Addressing the arguments raised in defendant's reply brief, the Court of Appeal acknowledged that section 1181, subdivision 6, uses the term "lesser crime" in the singular, but noted that, under section 7, "the singular number includes the plural . . . ." As for defendant's claim that no case law supported the proposed modification, the Court of Appeal acknowledged "the dearth of authority on this issue" but also asserted that "there is an equal lack of authority saying that we cannot undertake such a modification." The Court of Appeal additionally rejected defendant's state double jeopardy and estoppel arguments. We granted defendant's petition for review.

## II. DISCUSSION

■ We address here the narrow question of whether an appellate court, upon finding insufficient evidence supports a conviction for one offense, may modify the judgment to reflect a conviction for two lesser included offenses. In arriving at an affirmative answer to that question, the Court of Appeal had to reach two subsidiary conclusions. First, the court concluded that attempted kidnapping during the commission of a carjacking required a completed carjacking, an issue conceded by the Attorney General. Second, the court concluded that both attempted carjacking and attempted simple kidnapping were lesser included offenses of that greater offense. We need not decide here whether the Court of Appeal was correct with respect to either of these conclusions.[3] For purposes of this opinion, we will assume the truth of these conclusions and address the narrow issue stated above. Although defendant raises various constitutional objections to the Court of Appeal's modification of the judgment, we need not address such objections here since we find dispositive his claim that neither section 1181, subdivision 6 nor section 1260 authorizes the Court of Appeal's procedure. (*Lyng v. Northwest Indian Cemetery Prot. Assn.* (1988) 485 U.S. 439, 445 [99 L.Ed.2d 534, 108 S.Ct. 1319] ["A fundamental and longstanding principle of judicial restraint requires that courts avoid reaching constitutional questions in advance of the necessity of deciding them."]; *Santa Clara County Local Transportation Authority v. Guardino* (1995) 11 Cal.4th 220, 230–231 [45 Cal.Rptr.2d 207, 902 P.2d 225]; see also *Ashwander v. Valley Authority* (1936) 297 U.S. 288, 347 [80 L.Ed. 688, 56 S.Ct. 466] (conc. opn. of Brandeis, J.).)

■ Section 1181 prescribes the grounds upon which a trial court may grant a new trial after a verdict or finding has been made. (See § 1179 [defining "new trial"].) Subdivision 6 of section 1181 provides that a trial

---

[3] These issues are currently pending before this court in *People v. Medina*, review granted November 30, 2005, S137055■

court may grant a new trial "[w]hen the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed . . . ."

The Legislature added this provision in 1927[4] in response to our decision in *People v. Nagy* (1926) 199 Cal. 235 [248 P. 906]. In that case, we found insufficient evidence supported the defendant's conviction for first degree arson because there existed no evidence that the structure was occupied at the time of the fire. (*Id.* at pp. 236–239.) *Nagy* commented as to the proper remedy: "We are presented with a somewhat anomalous situation. The evidence in our opinion is sufficient to sustain a judgment of conviction of arson of the second degree, and insufficient to sustain a conviction of arson of the first degree, as found by the jury, and this court has neither the constitutional nor statutory authority to modify or interfere with the verdict of the jury in any respect. It is within our power only to affirm or reverse judgments in criminal cases. The case must, therefore, be remanded for a new trial." (*Id.* at p. 239.)

We first construed the 1927 enactment of section 1181, subdivision 6 in *People v. Kelley* (1929) 208 Cal. 387 [281 P. 609] (*Kelley*). *Kelley*, in acknowledging that the amendment was made in response to *Nagy*, commented that the "meaning and purpose of the amendment are so clear that we need not consume time in discussing the reason for its passage, beyond saying that its application to many criminal prosecutions will prevent reversals and new trials." (*Id.* at pp. 391–392.) *Kelley* outlined the effect of the new statutory provision: "The contention that there is no evidence to establish the charge set forth in the indictment presents a question of law, but, on appeal, the court having jurisdiction is no longer confronted with the necessity of reversing a judgment of conviction if it sustains the contention. If it finds the evidence insufficient to justify the conviction for the crime alleged in the indictment, but sufficient to justify the conviction of a lesser degree of the crime or of some lesser and included crime, it need not set aside the verdict entirely, but may direct a modification of the judgment without ordering a new trial, and remand the cause to 'the trial court for the sole purpose of enabling that court to prescribe the proper penalty in punishment

---

[4] In an amendment not pertinent here, section 1181, subdivision 6 was modified in 1951 to include references to a "finding." (Stats. 1951, ch. 1674, § 117, pp. 3850, 3851.)

for the crime the appellate court finds to have been committed." (*Id.* at p. 392.) *Kelley* found this provision constituted "a complete departure in our criminal jurisprudence, and one which on first impression seems a startling innovation in our procedure." (*Ibid.*)

*Kelley* ultimately applied the new rule and, after finding insufficient evidence supported the defendant's first degree murder conviction, modified the verdict to reflect a conviction for manslaughter. (*Kelley, supra,* 208 Cal. at p. 393.) *Kelley* reasoned: "Appellant was properly found guilty, on competent evidence, of a most serious offense, and the errors complained of did not, in our judgment, prejudicially contribute toward bringing about the finding that he killed [the victim]. No miscarriage of justice, therefore, resulted, except that, as a matter of law, the jury improperly fixed the degree of the crime and imposed the penalty therefor. That injustice may now be righted without subjecting the state and the defendant to the delay and expense of a new trial." (*Ibid.*)

Numerous cases, both from this court and the Courts of Appeal, subsequently applied *Kelley* to modify a verdict on appeal to reflect a conviction on a lesser included offense after finding insufficient evidence supported conviction of the greater offense. (See, e.g., *People v. Holt* (1944) 25 Cal.2d 59, 93 [153 P.2d 21] [modifying first degree murder verdict to second degree murder]; *People v. Howard* (1930) 211 Cal. 322, 329–330 [295 P. 333] [same]; see also *People v. Shaver* (1936) 7 Cal.2d 586, 593 [61 P.2d 1170] ["The power to . . . reduce the verdict is given to the trial court and also to an appellate court by subdivision 6 of section 1181 . . . and it has been exercised by this court and the District Court of Appeal."].)

In 1949, the Legislature amended section 1260, which generally specifies the power of an appellate court with respect to a judgment in a criminal case. The amendment added the following italicized language: "The court may reverse, affirm, or modify a judgment or order appealed from, *or reduce the degree of the offense or the punishment imposed,* and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial."[5] (Stats. 1949, ch. 1309, § 1, p. 2297 italics added.) This court in

[5] Section 1260 currently reads: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

*People v. Odle* (1951) 37 Cal.2d 52 [230 P.2d 345] (*Odle*), concluded that the amendment "did no more than bring section 1260 into accord with section 1181(6) with respect to reduction of the degree of an offense and make clear that the court may reduce the punishment in lieu of ordering a new trial, when there is error relating to the punishment imposed. The test for determining what action should be taken remains the same: was there prejudicial error in the proceedings? When, as in this case, the trial court is vested with discretion to determine the punishment [citation], and there has been no error, this court has no power to substitute its judgment for that of the trial court." (*Id.* at pp. 58–59.)

After *Odle*, courts routinely cited, without further discussion, both section 1181, subdivision 6, and section 1260 for the proposition that an appellate court may modify a verdict to reflect a conviction of a lesser included offense where insufficient evidence supports the conviction on the greater offense, and applied the rationale underlying *Kelley* to offenses other than murder. (See, e.g., *People v. Ruiz* (1975) 14 Cal.3d 163, 165 [120 Cal.Rptr. 872, 534 P.2d 712] [modifying conviction for possession of heroin for sale to simple possession of heroin]; *People v. Noah* (1971) 5 Cal.3d 469, 477 [96 Cal.Rptr. 441, 487 P.2d 1009] [modifying conviction for assault by a prisoner serving less than a life sentence to assault by means of force likely to produce great bodily injury].)

■ Although this court has stated with respect to section 1260 that " 'the power to change the offense is as unlimited as the power to change the degree' " (*People v. Enriquez* (1967) 65 Cal.2d 746, 749 [56 Cal.Rptr. 334, 423 P.2d 262], quoting Witkin, Cal. Criminal Procedure (1963) § 730, p. 702), it has also been recognized that an appellate court's power to modify a judgment is purely statutory. (See *People v. Romo* (1967) 256 Cal.App.2d 589, 596 [64 Cal.Rptr. 151].) We confirmed this in *People v. Lagunas* (1994) 8 Cal.4th 1030 [36 Cal.Rptr.2d 67, 884 P.2d 1015], in which we rejected a claim that principles of due process authorized courts to modify a verdict to reflect a conviction on a lesser *related* offense. *Lagunas* noted that section 1181, subdivision 6 only allowed modification to "a lesser crime included therein," and the same policy considerations underlying jury instructions on lesser related offenses simply did not apply to a court's power to modify the verdict. (*Lagunas, supra*, 8 Cal.4th at pp. 1036–1039.) *Lagunas* concluded that the "trial court . . . exceeded the statutory authority of section 1181 when it modified the jury's residential burglary verdict to the lesser related offense of receiving stolen property." (*Id.* at p. 1040.)

Examining the statutory scheme, neither the language nor the legislative history of sections 1181, subdivision 6, and 1260 provides authority for the Court of Appeal's modification of the judgment here. As discussed, the Legislature added section 1181, subdivision 6, for the purpose of overturning the result in *Nagy*, in which the court acknowledged that it may be appropriate under some circumstances to modify a judgment to reflect a conviction of a *single* lesser included offense shown by the evidence, but concluded it lacked the authority to do so. This court in *Kelley* characterized section 1181, subdivision 6 as empowering courts which find that insufficient evidence supported a jury's verdict on a greater offense "to prescribe the proper penalty in punishment" and to correct the "injustice" resulting from the circumstance that "the jury improperly fixed the degree of the crime and imposed the penalty therefor." (*Kelley, supra,* 208 Cal. at pp. 392, 393.) Likewise, this court in *Odle* made clear that section 1260, like section 1181, subdivision 6, empowered courts to "reduce the punishment in lieu of ordering a new trial, when there is error relating to the punishment imposed." (*Odle, supra,* 37 Cal.2d at p. 58.) In rejecting a due process claim that section 1181, subdivision 6 violated the defendants' right to have the jury fix the degree of the offense, *People v. Cowan* (1941) 44 Cal.App.2d 155 [112 P.2d 62] stated: "[T]he jury was not free to fix either degree [of murder] as a matter of mere discretion or choice resting with them, but it was their duty to fix it in accordance with the facts as disclosed by the evidence. Their error in performing that duty could be and was corrected on appeal, not by finding or changing any fact, but by applying the established law to the existing facts as found by the jury, the correction itself being in favor of and beneficial to the appellants." (*Id.* at p. 162.)

From the beginning, section 1181, subdivision 6, and later section 1260, have been understood to provide courts a mechanism for correcting the jury's error in "fix[ing] the degree of the crime." (*Kelley, supra,* 208 Cal. at p. 393; see *People v. Cowan, supra,* 44 Cal.App.2d at p. 162.) The statutory scheme properly serves this corrective function if a court replaces a single greater offense with a single lesser offense, since such a modification merely brings the jury's verdict in line with the evidence presented at trial. Every subsequent case that has applied these provisions to date, including those cited and discussed *ante*, has modified a greater offense to a single lesser offense, a point readily acknowledged by the Court of Appeal below. Far from providing a "dearth of authority" on the point as the Court of Appeal suggested, these cases constitute an acknowledgement of the long-standing historical understanding of the purpose underlying the statutory scheme to solve the problem presented in *Nagy*, a case involving a one-for-one modification, and to serve the corrective function articulated in *Kelley* and like cases. We are reluctant to expand the statute beyond the scope of its evident purpose.

■ Further underscoring the purpose of the statutory scheme, both statutes repeatedly refer to "the crime" or "the offense" in the singular. The Court of Appeal cited Penal Code section 7 in support of its interpretation of sections 1181, subdivision 6, and 1260, which provision defines commonly used terms appearing throughout the Penal Code. In a laundry list of general provisions, section 7 provides in relevant part that "the singular number includes the plural, and the plural the singular." This general provision would appear to be a slim reed upon which to support the Court of Appeal's unprecedented action. " ' " 'General terms should be so limited in their application as not to lead to injustice or oppression or an absurd consequence. It will always be presumed that the legislature intended exceptions to its language which would avoid results of this character. The reason of the law in such cases should prevail over its letter.' " ' " (*In re Michele D.* (2002) 29 Cal.4th 600, 607 [128 Cal.Rptr.2d 92, 59 P.3d 164], quoting *People v. Oliver* (1961) 55 Cal.2d 761, 767 [12 Cal.Rptr. 865, 361 P.2d 593].)

■ It would be inappropriate to apply the general provision of section 7 that "the singular number includes the plural" to sections 1181, subdivision 6, and 1260. As discussed, *Kelley* commented with respect to section 1181, subdivision 6, that it "mark[ed] a complete departure in our criminal jurisprudence," which constituted a "startling innovation in our procedure." (*Kelley, supra,* 208 Cal. at p. 392.) *Kelley* made its remarks with respect to the modification of one greater offense for a *single* lesser included offense. There is little doubt that modifying one greater offense to reflect convictions for *two* lesser offenses would have been an even greater "departure in our criminal jurisprudence" and an even more "startling innovation." (*Ibid.*) As we have stated, "it should not 'be presumed that the Legislature in the enactment of statutes intends to overthrow long-established principles of law unless such intention is made clearly to appear either by express declaration or by necessary implication.' " (*Theodor v. Superior Court* (1972) 8 Cal.3d 77, 92 [104 Cal.Rptr. 226, 501 P.2d 234], quoting *County of Los Angeles v. Frisbie* (1942) 19 Cal.2d 634, 644 [122 P.2d 526].) It is doubtful that the Legislature would have authorized by silence or by implication through a statute of general application such a departure from established precedent. Under these circumstances, applying section 7 to the present statutory scheme would lead to an interpretation that runs counter to both the legislative purpose of the statutory scheme and subsequent historical practice. (See *People v. Kunitz* (2004) 122 Cal.App.4th 652, 655–656 [18 Cal.Rptr.3d 843] [concluding that applying section 7 to restitution fines under section 1202.4, subdivision (b) would run counter to legislative intent].)

■ For all of the above reasons, we conclude that sections 1181, subdivision 6, and 1260 do not authorize an appellate court to modify a judgment to reflect convictions for two lesser included offenses upon finding insufficient

evidence of a single greater offense, and the Court of Appeal's two-for-one modification of the judgment here was improper.

Having so concluded, the proper remedy remains to be determined. There is no guidance in prior decisions construing sections 1181, subdivision 6, and 1260 on the matter. However, it seems logical that, where there are multiple lesser included offenses supported by the evidence at trial, a court exercising its discretion to modify the judgment pursuant to these provisions should choose the offense with the longest prescribed prison term so as to effectuate the fact finder's apparent intent to convict the defendant of the most serious offense possible. (Cf. § 654, subd. (a) ["An act or omission that is punishable in different ways by different provisions of law shall be punished under the provision that provides for the longest potential term of imprisonment . . . ."].) As between attempted carjacking and attempted kidnapping, the former provides a marginally greater sentencing range, since attempted carjacking is punishable by 18 months, two years six months, or four years six months (§§ 215, subd. (b), 664, subd. (a)), while attempted simple kidnapping is punishable by 18 months, two years six months, or four years (§§ 208, subd. (a), 664, subd. (a)).[6]

We therefore order the Court of Appeal, upon remand, to strike the modification of count 6 to the extent it reflected a conviction for attempted kidnapping and remand the matter to the trial court for resentencing. Although the Court of Appeal's prior remand order was for resentencing "on the modified convictions only," we believe a remand for a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances. (See *People v. Burbine* (2003) 106 Cal.App.4th 1250, 1259 [131 Cal.Rptr.2d 628] ["upon remand for resentencing after the reversal of one or more subordinate counts of a felony conviction, the trial court has jurisdiction to modify every aspect of the defendant's sentence on the counts that were affirmed, including the term imposed as the principal term"]; see also *People v. Bautista* (2005) 129 Cal.App.4th 1431, 1439 [29 Cal.Rptr.3d 272]; *People v. Jones, supra,* 75 Cal.App.4th at pp. 635–636.)

---

[6] As a subordinate term under the determinate sentencing law (see § 1170.1, subd. (a)), a consecutive sentence for either attempted carjacking or attempted kidnapping would result in the same term, namely, 10 months (calculated as one-third the midterm of two years six months). However, the trial court upon resentencing is not obligated to impose a consecutive term on this count, thus possibly bringing into play the higher sentencing range for attempted carjacking.

## III. DISPOSITION

The judgment of the Court of Appeal is reversed to the extent it is inconsistent with this opinion. The matter is remanded to that court with directions to strike in count 6 the conviction for attempted kidnapping and to remand to the trial court for resentencing on all counts. In all other respects, the judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Corrigan, J., and Kitching, J.,[*] concurred.

---

[*]Associate Justice of the Court of Appeal, Second Appellate District, Division Three, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.