Filed 5/19/16  P. v. Hernandez CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | G050866 |
| v. | (Super. Ct. No. 13NF3012) |
| LUIS MAURIZZIO HERNANDEZ, | O P I N I O N |
| Defendant and Appellant. | |

Appeal from a judgment of the Superior Court of Orange County, Kimberly Menninger, Judge.  Reversed in part and affirmed in part.

Eric Cioffi, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Arlene A. Sevidal and Sean M. Rodriguez, Deputy Attorneys General, for Plaintiff and Respondent.

\*          \*          \*

A jury convicted defendant Luis Maurizzio Hernandez of possession of a controlled substance (Health & Saf. Code, §11377, subd. (a) — count 1),[1] domestic battery resulting in corporal injury (Pen. Code, § 273.5, subd. (a) — count 2),[2] and possession of a controlled substance without a prescription (Bus. & Prof. Code, § 4060 — count 3). The court sentenced him to two years in jail on count 1 and suspended sentence on counts 2 and 3 pursuant to section 1170, subdivision (a).

On appeal defendant contends the court violated his Sixth Amendment right to confrontation with respect to count 2 by admitting into evidence the victim's testimonial out-of-court statements. The Attorney General concedes the error.

We agree with the parties that the court prejudicially erred by admitting the victim's statements into evidence and that defendant's conviction on count 2 must be reversed. The People may retry defendant for this offense. We reject, however, the Attorney General's suggestion that we "should instruct the lower court that if the district attorney's office chooses not to retry [defendant, his] conviction on count 2 should be reduced" to a violation of the lesser included offense of battery.

FACTS AND PROCEDURAL HISTORY

*The Parking Lot Incident*

Off-duty Officer Erwin Rocha was parking his vehicle in a parking lot when he heard "screaming and yelling back and forth," followed by a car alarm and

---

[1] Count 1 of the information charged defendant with felony possession of a controlled substance for sale. (Health & Saf. Code, § 11378.) The jury found defendant not guilty of this charge, but guilty of the lesser included offense of possession of a controlled substance. (Health & Saf. Code, § 11377.)

[2] All further statutory references are to the Penal Code unless otherwise stated.

2

several thumps. He saw defendant and a female (later identified as K.S.) involved in an altercation next to a car. Rocha approached them and saw defendant push K.S. onto the car, pick her up, and slam her to the ground. After defendant threw her on the ground, K.S. was upset and walked away.

Rocha told defendant to show his hands, but defendant began reaching into his pockets. Rocha took out his off-duty firearm and displayed it to defendant, saying, "I need to see your hands," and, "Hey, I'm an off-duty police officer and you're now going to be detained." Defendant complied and raised his hands.

Rocha told K.S. to stay back. Once Rocha determined that the situation was safe, he put his firearm in his front pocket and called 911.

Several minutes later, three on-duty officers (including David Aguirre) responded to the scene. Aguirre took defendant into custody, smelled marijuana, and searched him. Aguirre found methamphetamine and Clonazepam (a central nervous system depressant) on defendant's person.

The next officer to arrive was Omar Brioso. He saw that the three other on-duty officers had separated defendant from K.S., and were speaking to some witnesses. Aguirre showed Brioso the drugs he had found on defendant's person. Brioso spoke with Rocha for a couple of minutes and then spoke with K.S.

After interviewing K.S., Brioso took some photographs of her, which showed redness on her legs, markings on her feet, and dirt and bruising on her leg and ankle.

*Brioso's Interview of K.S.*

In his interview of K.S., Brioso asked what had happened. K.S. replied she screamed at defendant who just stood there and looked at her. She denied knowing defendant's name, but Brioso expressed his disbelief.

3

Brioso asked K.S. whether she was defendant's girlfriend. K.S. answered, "Yeah." Brioso asked how long she had been dating defendant, whether she lived with him, how long they had lived together, and whether they had any children together. K.S. said she and defendant had been dating for two years and living together for four months, and that they did not have any children.

Brioso asked K.S. to talk about defendant hitting her. K.S. denied that defendant had hit her. Brioso asked whether people were "just imagining things" when they saw defendant hitting and punching her. Brioso said that defendant was "going to jail anyway" because "he ha[d] drugs." K.S. reiterated they were "just yelling." In response, Brioso asked, "Why was he hitting you?" K.S. said defendant hit her during an argument about a watch, but insisted he did not hurt her. Brioso said he understood that defendant had picked her up and slammed her. K.S. said she tripped and fell. Brioso asked whether defendant had thrown her on the ground. K.S. replied she had nothing to say.

The conversation continued in this vein. When Brioso asked K.S. whether she wanted to be with someone who "beats on you," K.S. answered, "He didn't used to." Then she asked, "Am I going to jail?" Brioso said: "[H]ere's my concern. I'm not going to take you to jail, okay? I'd just rather you'd be honest and up front with me, okay?"

After more conversation, K.S. asked if she could say goodbye to defendant before he was taken to the police station. Brioso replied, "It depends on how cooperative you are with me." After K.S. promised to be cooperative, Brioso said, "Tell me what's happening. If I don't feel like you're being honest with what's happening I won't let you talk to him." K.S. then said that she and defendant had been fighting because she was "being a bitch" and refused to give him back "his stuff" and "locked the window," and then her car alarm went off. Brioso said, "Okay. And he hit you." K.S. said, "No. He didn't hit me like I just came at him . . . . I think he thought I was going to hit him." Brioso said, "You're not being honest with me." K.S. said, "I don't know why. I don't

4

want to press charges but if I tell you the truth are you going to find out?" Brioso said he would write down that she did not want to press charges, but said, "I'd rather you tell me the truth." K.S. finally admitted that defendant had hit her about three times and had thrown her to the ground.

Before ending the interview, Brioso asked K.S. for her address. After she gave him an address, Brioso asked whether that was the address where she lived with defendant. She asked, "Do I have to give it to you?" and stated defendant's family did not want to be involved. Brioso said he wanted to know where she lived with defendant "just for [Brioso's] records." K.S. again asked, "Do I have to tell you?" but eventually told Brioso the address where she and defendant lived.

In closing, Brioso asked K.S. whether her bruise was new and whether it hurt. He told her he was going to take photographs to document there were no injuries.

*Relevant Pretrial and Trial Proceedings*

Defendant filed a pretrial motion in limine to exclude K.S.'s statements, arguing they violated the confrontation clause of the Sixth Amendment and did not qualify as spontaneous statements under the Evidence Code section 1240 exception to the hearsay rule.

At the hearing on the motion, Aguirre testified as follows: By the time he arrived at the parking lot, defendant had been "detained" by an off-duty officer. K.S. was standing about 15 to 20 feet away and yelled that defendant had done nothing wrong. Aguirre told her to back away. Aguirre searched defendant, found what appeared to be controlled substances, and placed him in handcuffs. Aguirre did not fully know what happened until Brioso arrived at the scene and "conducted his preliminary investigation." Aguirre saw Brioso speak with K.S. on the sidewalk; she appeared to be crying and upset. Brioso later told Aguirre that there was a "domestic violence incident between" defendant and K.S.

5

The court — relying on *People v. Corella* (2004) 122 Cal.App.4th 461 (*Corella*), which, in the court's words, "deals with both admissibility and with the . . . right to confrontation" — denied defendant's motion to exclude the victim's statements. The court found the statements were spontaneous and nontestimonial[3]

At trial, Brioso testified as follows: By the time he arrived on the scene, several officers, including Aguirre, had separated the parties and were speaking to some witnesses. Brioso's "main focus" was to "investigate the altercation that took place." He first spoke to Aguirre and the two other on-duty officers who were already present at the scene. He learned that Rocha was a witness and that defendant "was in possession of some drugs." Brioso then interviewed Rocha for a few minutes. Brioso then interviewed K.S. He recorded his conversation with K.S. on his digital audio recorder and later booked the recording into evidence. On cross-examination, defense counsel asked Brioso whether the purpose of his conversation with K.S. was "to try to see what occurred that day." Brioso answered in the affirmative.

Over defense counsel's objection, the recording of the interview was admitted into evidence. The jurors were given a copy of the transcript, heard the audiotape, and saw the videotape.

K.S. did not testify at trial.


DISCUSSION


*Defendant's Domestic Violence Conviction Must Be Reversed*

Defendant contends the court prejudicially erred under *Crawford v. Washington* (2004) 541 U.S. 36 (*Crawford*) by denying his motion to exclude the victim's statements. The Attorney General concedes the error, and we agree.

---

[3] On appeal defendant does not challenge the court's finding the victim's statements were spontaneous declarations under Evidence Code section 1240.

6

The confrontation clause of the Sixth Amendment prohibits the "'admission of testimonial statements of a witness who did not appear at trial unless [he or she] was unavailable to testify, and the defendant had had a prior opportunity for cross-examination.'" (*Davis v. Washington* (2006) 547 U.S. 813, 821 (*Davis*).) In *Davis*, the Supreme Court articulated the following (nonexclusive) guidelines for determining whether a statement made in response to police questioning is testimonial: "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency. They are testimonial when the circumstances objectively indicate that there is no such ongoing emergency, and that the primary purpose of interrogation is to establish or prove past events potentially relevant to later criminal prosecution." (*Id.* at p. 822.)[4]

A court must objectively analyze whether a statement was made and taken "to establish or prove some past fact for possible use in a criminal trial." (*People v. Cage* (2007) 40 Cal.4th 965, 984 (*Cage*).) "[T]he relevant inquiry is not the subjective or actual purpose of the individuals involved in a particular encounter, but rather the purpose that reasonable participants would have had, as ascertained from the individuals' statements and actions and the circumstances in which the encounter occurred." (*Michigan v. Bryant* (2011) 562 U.S. 344, 360.) The location and timing of the interview are not dispositive: Where a victim's "statements were neither a cry for help nor the provision of information enabling officers immediately to end a threatening situation, the fact that they were given at an alleged crime scene and were 'initial inquiries' is immaterial." (*Davis*, *supra*, 547 U.S. at p. 832.)

---

[4] *Crawford* used the term ""interrogation"" "'in its colloquial, rather than any technical legal, sense'" (*Davis*, *supra*, 547 U.S. at p. 822) and included statements made "in response to structured police questioning" (*Crawford*, *supra*, 541 U.S. at p. 53, fn. 4).

"[T]hough a statement need not be sworn under oath to be testimonial, it must have occurred under circumstances that imparted, to some degree, the formality and solemnity characteristic of testimony." (*Cage*, *supra*, 40 Cal.4th at p. 984.) "[S]ufficient formality and solemnity are present when, in a nonemergency situation, one responds to questioning by law enforcement officials, where deliberate falsehoods might be criminal offenses." (*Ibid*; see *Davis*, *supra*, 547 U.S. at p. 830, fn. 5 ["It imports sufficient formality, in our view, that lies to [investigating officers] are criminal offenses"].)[5]

A reviewing court independently determines whether a statement was testimonial for purposes of the confrontation clause. (*People v. Nelson* (2010) 190 Cal.App.4th 1453, 1466.)

Here, no emergency existed when Brioso interviewed K.S. Defendant had already been detained. K.S. had been instructed to stay a distance away from him. Brioso's main focus was to investigate the *prior* altercation, i.e., to gather information about *past* potentially criminal conduct. He persistently asked K.S. whether defendant had hit or thrown her (causing injury) and whether defendant and K.S. were romantic cohabitants, i.e., questions related to the elements of the offense of domestic violence

---

[5] The trial court based its denial of defendant's exclusion motion on the following passage in *Corella*, *supra*, 122 Cal.App.4th at p. 469: "Preliminary questions asked at the scene of a crime shortly after it has occurred do not rise to the level of an 'interrogation.' Such an unstructured interaction between officer and witness bears no resemblance to a formal or informal police inquiry that is required for police interrogation as that term is used in *Crawford*." But the "unstructured interaction" considered in *Corella* were statements made to a 911 operator and to a police officer and medical personnel who responded to the emergency. (*Corella*, at p. 464.) The *Corella* court concluded there was no abuse of discretion in receiving those statements under the spontaneous declaration exception to the hearsay rule. (Evid. Code, § 1240.) Statements made under the requisite "stress of excitement" often weigh against a finding they were testimonial. But unlike Brioso's questioning here, the victim's statements received as evidence in *Corella* bore none of the indicia of a "response to structured police questioning." (*Crawford*, *supra*, 541 U.S. at p. 53, fn. 4.) We also note that *Corella* predates *Davis* and *Cage*. Thus, the *Corella* court was not informed by the judicial gloss on *Crawford* provided by the *Davis* and *Cage* opinions.

8

corporal injury. (§ 273.5, subds. (a), (b)(2) & (3) [willful infliction of corporal injury on the offender's cohabitant or girlfriend].) K.S. was aware of the gravity of the interrogation. She asked Brioso whether she was "going to jail." She asked him twice whether she *had* to reveal the address where she lived with defendant, before she reluctantly gave Brioso the information. Brioso recorded his interrogation of K.S. The prosecution used the recording at trial, along with a transcript of K.S.'s statements, as a "substitute for live testimony." (*Davis*, *supra*, 547 U.S. at p. 830.) These circumstances — viewed objectively — show that Brioso's primary purpose was to investigate potentially criminal past conduct and that K.S.'s statements in this nonemergency setting were testimonial for purposes of the confrontation clause.

The court's admission of K.S.'s statements therefore violated defendant's right to confront the witnesses against him. Because K.S.'s statements provided the only evidence supporting the dating relationship/cohabitation element of the offense of domestic violence corporal injury, the error was prejudicial. (*People v. Rowland* (1992) 4 Cal.4th 238, 269 [state court conviction unsupported by substantial evidence violates federal and state due process clauses]; *Chapman v. California* (1967) 386 U.S. 18.) Defendant's conviction on count 2 must be reversed.

*The People May Retry Defendant for Domestic Violence Corporal Injury, but May Not Elect to Reduce the Current Conviction to the Lesser Included Offense of Battery*

The Attorney General contends that on remand, if the People elect *not* to retry defendant for domestic violence corporal injury, then his conviction on count 2 should be reduced to the lesser included offense of battery. She argues the evidence — specifically, Rocha's testimony that defendant hit K.S. and threw her to the ground, together with the photographs of K.S.'s injuries — shows "beyond a reasonable doubt that the jurors would have found" he committed battery. To support her contention, the

9

Attorney General relies (with scant analysis) on *People v. Matian* (1995) 35 Cal.App.4th 480 (*Matian*) and section 1260.

The Attorney General is correct that the People may retry defendant on the domestic violence corporal injury charge. (*People v. Harvey* (1984) 163 Cal.App.3d 90, 108 ["where reversal of a conviction is premised on trial court error in admitting evidence against the defendant, retrial is not prohibited notwithstanding that the quantum of admissible evidence at trial may have been legally insufficient to sustain a conviction"]; see *Lockhart v. Nelson* (1988) 488 U.S. 33, 40 [erroneous admission of evidence is an "ordinary 'trial error'" which does not bar retrial].)

But the Attorney General's contention that defendant's current conviction on count 2 may be reduced to a battery conviction presents a more complicated question. Our Supreme Court "has long recognized that under . . . sections 1181, subdivision 6, and 1260, an appellate court that finds that insufficient evidence supports the conviction for a greater offense may . . . modify the judgment of conviction to reflect a conviction for a lesser included offense." (*People v. Navarro* (2007) 40 Cal.4th 668, 671, fn. omitted (*Navarro*).) This power "to modify a judgment is purely statutory." (*Id.* at p. 678.)

Section 1260 authorizes an appellate court to modify a judgment appealed from, or to reduce the degree of the offense or the punishment imposed. Similarly, under section 1181, subdivision (6) (section 1181(6)), a trial court may grant a defendant's new trial motion when the verdict is contrary to the evidence, but if the evidence shows the defendant is not guilty of the degree of the crime of which he was convicted, but guilty of a lesser included crime, a court (including an appellate court to which the judgment is appealed) may modify the verdict.

In *Matian*, the Court of Appeal concluded the evidence was insufficient to sustain the jury's conviction of the defendant for felony false imprisonment (*Matian*, *supra*, 35 Cal.App.4th at p. 483), but amply supported a conviction for the lesser included offense of misdemeanor false imprisonment (*id*. at p. 487). Accordingly, the appellate

10

court modified the judgment to reflect the defendant's conviction of misdemeanor false imprisonment. (*Id.* at p. 488.) *Matian* explained that (1) section 1181(6)'s "purpose for allowing an appellate court to modify the judgment to a lesser included offense is to 'obviate the necessity of a new trial when the insufficiency of the evidence only goes to the degree of the crime'" (*Matian*, at p. 487), and (2) section 1260 authorizes "appellate courts to modify a judgment to reflect a conviction of a lesser, necessarily included offense when the state of the evidence warrants it" (*Matian*, at p. 488).

In *Navarro*, our Supreme Court examined the legislative history of these statutes, observing that section 1181(6), "and later section 1260, have been understood to provide courts a mechanism for correcting the jury's error in 'fix[ing] the degree of the crime.'" (*Navarro*, *supra*, 40 Cal.4th at p. 679.) *Navarro* declined to expand the statutory scheme beyond the scope of its corrective function. (*Ibid.*)[6] More recently, in *People v. Eid* (2014) 59 Cal.4th 650, our Supreme Court reiterated the statutory scheme's limited purpose and emphasized that these statutes do *not* give courts "a general license to modify verdicts in accordance with the evidence." (*Id.* at p. 659.)

Accordingly, sections 1260 and 1181(6) must be strictly and narrowly interpreted and applied only to permit a court to *correct a jury's error* in convicting a defendant of a greater offense when the evidence supports only a lesser degree of the offense or a lesser included offense. This narrow, corrective purpose is inapplicable to the instant case. Here, the jury did not err. Rather, the trial court erred by admitting into evidence, for the jury's consideration, K.S.'s testimonial out-of-court statements.

---

[6] Specifically, *Navarro* held that sections 1181(6) and 1260 do *not* authorize an appellate court to, "upon finding insufficient evidence supports the judgment of conviction for *one* greater offense, substitute convictions for two lesser included offenses shown by the evidence at trial." (*Navarro*, *supra*, 40 Cal.4th at pp. 671-672.) "As *Navarro* explained, the Legislature restricted the reviewing court to the 'corrective function' of 'replac[ing] a single greater offense with a single lesser offense . . . .'" (*Eid*, *supra*, 59 Cal.4th at p. 659.)

Moreover, because K.S.'s statements contain evidence of battery, we cannot reduce defendant's count 2 conviction to reflect a battery conviction. To do so would usurp the jury's factfinding role and violate defendant's constitutional rights.[7] As discussed below, contrary to the Attorney General's assertion, we cannot be certain that the jury would have found defendant guilty of battery based solely on Rocha's testimony and the photographs of K.S.'s alleged injuries.

The elements of simple battery are that the defendant (1) willfully and unlawfully touched the victim in a harmful or offensive manner (§ 242), and (2) did not act in self-defense (*People v. Mayes* (1968) 262 Cal.App.2d 195, 198). (CALCRIM No. 960.) Only the unlawful touching element was at issue in this case.[8] K.S.'s statements contained strong evidence of the touching element; she admitted that defendant hit her three times and threw her to the ground. Rocha testified he saw defendant push K.S. into a car and lift her and slam her into the ground. We cannot infer from the jury's conviction of defendant on count 2 that the jury believed Rocha's testimony. Rather, the jury may have based its conviction of defendant solely on K.S.'s statements that were erroneously admitted into evidence.

Accordingly, we lack the authority to simply reduce defendant's count 2 conviction to a conviction of battery. Nor does the Attorney General request us to do so. Rather, she contends we should essentially delegate our section 1260 authority to the People, who may elect, in her view, to retry defendant for the greater offense or to accept

---

[7] The Fifth Amendment due process clause and the Sixth Amendment right to a jury trial require that a criminal conviction must "rest upon a jury determination that the defendant is guilty of every element of the crime with which he is charged, beyond a reasonable doubt." (*United States v. Gaudin* (1995) 515 U.S. 506, 510.) As stated in *People v. Eid*, *supra*, 59 Cal.4th at page 659, a reviewing court "has no direct factfinding role" when "determining the validity of a judgment."

[8] Defendant, however, contends he was deprived of the opportunity to cross-examine the victim on whether he acted in self-defense.

12

his automatic conviction on the lesser offense.[9] The respondent's brief relies solely on *Matian*, with the following scant analysis and argument: "This Court should instruct the lower court that if the district attorney's office chooses not to retry [defendant, his] conviction on count 2 should be reduced from a violation of section 273.5 to a violation of section 242. (See [*Matian*, *supra*,] 35 Cal.App.4th [at p.] 488 [section 1260 'authoriz[es] appellate courts to modify a judgment to reflect a conviction of a lesser, necessarily included offense when the state of the evidence warrants it'].)" This conclusionary contention is hardly persuasive and we reject it.

DISPOSITION

Defendant's conviction on count 2 is reversed. In all other respects, the judgment is affirmed.

If the People choose to retry defendant, they may do so for domestic violence corporal injury or for the lesser offense of battery. (*People v. Lagunas* (1994) 8 Cal.4th 1030, 1038.)

IKOLA, J.

WE CONCUR:

MOORE, ACTING P. J.

FYBEL, J.

---

[9] It appears the Attorney General asks us to determine that reduction of defendant's conviction to battery would be appropriate and to then direct the trial court to effectuate the reduction contingent upon the People's requesting it on remand.

13