Filed 9/22/20  P. v. Taitague CA4/1
**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>　　Plaintiff and Respondent,<br><br>　　v.<br><br>VICTOR TAITAGUE,<br><br>　　Defendant and Appellant. | D075700<br><br><br>(Super. Ct. No. SCD279194) |

APPEAL from a judgment of the Superior Court of San Diego County, Esteban Hernandez, Judge.  Affirmed in part.  Remanded with instructions.

Heather L. Beugen, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, Scott C. Taylor and Heather B. Arambarri, Deputy Attorneys General, for Plaintiff and Respondent.

Following a brief, physical clash between Victor Taitague and a police officer, Taitague was charged with and convicted of resisting an executive

officer (Pen. Code,[1] § 69).  He appeals the conviction contending the court erred by not sua sponte offering a simple assault instruction as a lesser included offense, by admitting evidence that officers had information that defendant had discharged a firearm previously and there was probable cause for arrest for negligent discharge of a firearm, and by imposing a one-year prison term as an enhancement for a prison prior under section 667.5, subdivision (b).  We conclude the court's failure to offer the simple assault instruction was not erroneous because there was not substantial evidence to support it.  We further conclude that the trial court did not abuse its discretion by admitting the evidence of a possible previous firearm discharge because it was highly probative information with limited prejudicial effect.  However, we agree that amendments to section 667.5, subdivision (b) make the imposition of the one-year prison enhancement in this case improper, and we will remand the matter for resentencing.

I

BACKGROUND AND PROCEDURAL FACTS

On October 29, 2018 around 9:00 p.m., San Diego Police Officer Geoffrey Ulovec and his partner Officer Teresa Fuentes were on patrol when they received a radio call directing them to a domestic disturbance in a nearby Target parking lot.  Dispatch informed the officers the male would not permit the female to leave, the female was injured, and a rock may have been involved.  Marisela M., who called 911, also told dispatch that the male had fired a gun in the past, and she was not sure if he had a gun with him.

While driving to the scene, the officers conducted an electronic records check and learned through the Officer Notification System that Taitague had possibly been involved in a shooting at a dwelling.  The records search also

---

[1]     Further unspecified statutory references are to the Penal Code.

indicated defendant may have been involved in negligent discharge of a firearm. The notification instructed the officers to contact the National City Police Department if the individual were located. Officer Ulovec unsuccessfully attempted to contact National City on his cell phone.

The officers testified that the notification indicated probable cause to arrest, so they should detain defendant until they could confer with the National City Police Department to determine the status of the case. Officer Ulovec also explained that because the domestic violence allegation was a potential crime that required him to investigate, he would detain the individuals involved to determine what happened.

The officers arrived at the scene in a marked police vehicle, wearing their uniforms. They did not verbally identify themselves as police officers, but two witnesses to the interaction testified at trial that they were easily identifiable as police. Taitague is around the same height as Officer Ulovec, who is about six-foot-one, but heavier, and he is several inches taller than Officer Fuentes, who is five-foot-seven. Officer Ulovec did not see any weapons on Taitague when he arrived, but Officer Ulovec did not know whether defendant had any weapons on him, and defendant's hands were in his pockets. Officer Fuentes observed that the woman appeared to have been crying and seemed upset.

Officer Fuentes asked the couple, "What's up, guys?" Defendant told the officers something like, "We ain't with you guys." Officer Fuentes asked the woman if her name was the one dispatch had supplied; the woman cried and walked in the opposite direction from defendant. Officer Fuentes also attempted to make contact with defendant, but Taitague refused to answer any questions and turned to walk away. Officer Fuentes followed him and told him they had received a dispatch call.

3

She told defendant he could not go anywhere and commanded him to stay, but defendant continued walking away.  Officer Ulovec considered this behavior passive resistance, and in response he grabbed at one of defendant's arms, making contact with the sleeve of the sweater or jacket.  Defendant immediately pulled away.

Officer Ulovec grabbed at defendant's arm a second time, and defendant swung his arms back at the officer.  To one witness, this looked like Taitague elbowed Officer Ulovec; however, defendant never made physical contact.  Defendant began to physically resist and pull away from Officer Ulovec.

Officer Fuentes told defendant to stop resisting or she would use the taser, but defendant continued to physically struggle with Officer Ulovec.  Officer Fuentes deployed her taser, after which Taitague momentarily stopped resisting.  Officer Ulovec restrained defendant with two pairs of handcuffs.

The officers conferred with the National City Police Department, which provided a declaration of arrest.  Ultimately, defendant was not charged with negligent discharge of a firearm.  Officer Ulovec did not witness any domestic violence, and defendant was never arrested for a domestic violence charge, either.  He was only charged with resisting arrest.  (§ 69.)

The amended information charged Taitague with two counts: (1) resisting an executive officer by means of threats and violence to deter and prevent another from performing a duty imposed by law and resisting by use of force and violence (§ 69; count 1) and (2) misdemeanor violation of a protective order (§ 166, subd. (c)(1); count 2) for an unrelated incident.  The jury received instructions for both these counts, as well as the lesser included

4

offense to count 1 of resisting, obstructing, or delaying a peace officer in violation of section 148, subdivision (a)(1).

The jury found defendant guilty on both counts. The court sentenced Taitague to the midterm of two years on count 1, plus one year consecutive for a prison prior (§§ 667.5, subd. (b); 668), and credit for time served of 76 days concurrent with count 1 for the misdemeanor violation of section 166, subdivision (c)(1), count 2. It also imposed various fines, fees, and assessments.

## II

## DISCUSSION

### A. *Assault as Lesser Included Offense*

Defendant contends the court erred by failing to sua sponte offer an instruction on count 1 for the lesser included offense of assault in violation of section 240. The Attorney General concedes assault can be a lesser included offense of resisting an officer but maintains that the court had no duty to offer that instruction because it was not supported by substantial evidence. We agree.

We review whether a trial court improperly failed to instruct on a lesser included offense de novo. (*People v. Souza* (2012) 54 Cal.4th 90, 113; *People v. Brown* (2016) 245 Cal.App.4th 140, 152 (*Brown*).) A court is obligated to instruct the jury on a lesser included offense only if there is substantial evidence supporting it. (*People v. Breverman* (1998) 19 Cal.4th 142, 154, 162 (*Breverman*).) Substantial evidence is " ' "evidence that a reasonable jury could find persuasive" ' [citation], which, if accepted, ' "would absolve [the] defendant from guilt of the greater offense" [citation] *but not the lesser*.' " (*People v. Cole* (2004) 33 Cal.4th 1158, 1218; see also *Breverman*, at p. 162.) We do not evaluate the credibility of witnesses, and

5

we resolve doubts in favor of giving the instruction. (*Breverman,* at pp. 154, 162; see also *People v. Strozier* (1993) 20 Cal.App.4th 55, 63.) But when the evidence in support of the lesser included offense is " 'minimal and insubstantial,' " the lesser included offense instruction does not need to be given. (*People v. Barton* (1995) 12 Cal.4th 186, 201.)

We begin by reviewing the elements of sections 69 and 240. A defendant violates section 69 when he or she attempts to deter the officer's lawful duty by threatening force or violence. (*Brown*, *supra*, 245 Cal.App.4th at p. 151, citing *People v. Smith* (2013) 57 Cal.4th 232, 240.) A defendant also violates section 69 by knowingly resisting an officer's lawful duty by using force or violence against the officer. (*Brown*, at p. 151.)

"[A]ssault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) It does not require specific intent to cause injury or subjective awareness of the risk that injury might occur. (*People v. Williams* (2001) 26 Cal.4th 779, 790.) It "requires an intentional act and actual knowledge of those facts sufficient to establish that the act by its very nature will probably and directly result in the application of physical force against another." (*Ibid.*)

Taitague cites to *Brown* for the proposition that simple assault is a lesser included offense to a section 69 violation under the accusatory pleading test. Under this test, a court considers "whether the facts in the accusatory pleading include all the statutory elements of assault." (*Brown*, *supra*, 245 Cal.App.4th at p. 153, citing *People v. Birks* (1998) 19 Cal.4th 108, 117-118.) If they do and it is not possible to violate the statute without committing assault, assault is a lesser included offense of section 69. (*Brown*, at pp. 152-153.) Even assuming the accusatory pleading test applies here, we conclude

6

there was not substantial evidence to support an assault conviction in this case.

In *Brown* the defendant had been riding a bicycle on the sidewalk in violation of the local municipal code, and he had been wearing headphones and riding the bicycle without a light in violation of the Vehicle Code. (*Brown*, *supra*, 245 Cal.App.4th at p. 146.) Officers pursued the defendant on foot and caught up to him in a parking lot. (*Ibid.*)

Officers testified that Brown refused to dismount his bicycle or stop, so one officer tackled him and threw him off the bicycle, taking him to the ground. (*Brown, supra*, 245 Cal.App.4th at p. 146.) Then the defendant swung his hands with a clenched fist, and an officer used a fist to hit the defendant in the torso, after which the defendant continued to swing, so a second officer "delivered three 'compliance strikes,' " one to his torso and two to the side of the defendant's head, after seeing the defendant reach for something in his waistband. (*Id.* at p. 147.) In contrast, Brown testified that he fell off his bicycle when he hit a curb, and while he was facedown, neither resisting nor fleeing, one of the officers dove onto his back and pinned him, then slugged him in the head three times. (*Id.* at p. 147.) Central to Brown's defense in the case was the theory that officers did not act lawfully because they used unreasonable and excessive force. (*Id.* at pp. 149, 154-155.)

The court of appeal explained that "the jury was not required to choose and fully credit only one of the two versions . . . ." (*Brown, supra*, 245 Cal.App.4th at p. 154.) Because the jury could have concluded that officers acted with excessive force and that Brown unreasonably struck the officers, there was substantial evidence to support a simple assault conviction. (*Ibid.*)

For the jury here to find Taitague guilty of assault but not guilty of resisting an officer (see *Breverman, supra*, 19 Cal.4th at p. 162), it would

7

have had to conclude that the police officers used unreasonable or excessive force and were therefore not engaged in the lawful practice of their duties at the time. (See *Brown*, *supra*, 245 Cal.App.4th at pp. 154-155.) The jury would also have needed to conclude defendant countered excessive force with excessive force; otherwise, he would not have been guilty of any crime at all. (See *ibid.*) In other words, unless there was substantial evidence that the police officers engaged in unreasonable or excessive force, the failure to offer the instruction for assault was not erroneous.

While the jury in *Brown* could have concluded the police and the defendant acted with excessive force based on the evidence, this case is factually distinguishable. First, the circumstances surrounding the police detention were markedly different. In *Brown*, the defendant was a 67-year-old man who was about five feet eight inches and weighed 140 pounds, while the officers were six feet tall and weighed 175 pounds and 200 pounds. (*Brown*, *supra*, 245 Cal.App.4th at p. 146.) Here, both Officer Ulovec and the defendant were about six-foot-one, and the defendant outweighed the officer, changing the calculus of what physical actions would be reasonable. Second, police in *Brown* stopped the defendant for vehicle and municipal code violations, nonviolent offenses. (*Ibid.*) Here, police responded to a domestic violence call regarding defendant, who police were informed was wanted for questioning about negligent discharge of a firearm, and who police were informed may have had a firearm on his person. Thus, the potential danger for officers here was heightened.

In *Brown*, it was not clear how the defendant ended up on the ground, handcuffed, with physical injuries because of disputed factual testimony, so the jury had to determine what specifically occurred. (*Brown*, *supra*, 245 Cal.App.4th at pp. 146-147.) Here, the testimony was consistent: Officers

identified defendant and the woman by name and told defendant to stop, but defendant continued to walk away; Officer Ulovec grabbed at one of defendant's sleeves, and defendant pulled away; Officer Ulovec grabbed at defendant a second time, and defendant swung at the officer without making physical contact; and defendant continued to physically resist the officer. Given defendant's size and strength, as well as the undisputed sequence of events, the evidence does not support a finding that officers used excessive or unreasonable force in moving to detain defendant. Instead, the evidence shows that officers used only the amount of force necessary to gain control over defendant.[2]

Officer Ulovec's testimony at trial that he believed, looking back, it would have been better to tell defendant he was being detained before touching him does not change our opinion. Whether there was a better way to initiate contact or address defendant is a different issue than whether officers used excessive force.

Even if the court erred by failing to offer the assault instruction sua sponte, the failure to do so would constitute harmless error. " ' "[T]he failure to instruct sua sponte on a lesser included offense in a noncapital case is, at most, an error of California law alone, and is thus subject only to state standards of reversibility." [Citation.]' " (*Brown, supra,* 245 Cal.App.4th at p. 155.) We reverse a judgment based on failure to provide an instruction on a lesser included offense "only if, 'after an examination of the entire cause, including the entire cause, including the evidence' [citation], it appears 'reasonably probable' that the defendant would have obtained a more

_____

[2] Whether the use of a taser was appropriate in the circumstances is not relevant to whether defendant assaulted the officer because defendant's actions preceded the use of the taser.

favorable outcome had the error not occurred. [Citation.]" (*Breverman*, *supra*, 19 Cal.4th at p. 178.)

Based on our review of the entire record, it is not reasonably probable defendant would have obtained a more favorable outcome had the jury been instructed with the lesser included offense of assault. In order to reach a verdict on assault, the jury would have had to determine that appellant used excessive force in response to officers' use of excessive force (see *Brown*, *supra*, 245 Cal.App.4th at p. 154), a proposition for which, as explained *supra*, there was not substantial evidence.

In addition, the jury's verdict indicates it is not reasonably probable the additional instruction would have changed the outcome. CALCRIM No. 2670 instructed jurors that the People bore the burden of proving beyond a reasonable doubt that the officers lawfully performed their duties. A guilty verdict necessarily meant the jury concluded the officers behaved lawfully, i.e., they did not engage in the use of excessive force. (See *People v. Edelbacher* (1989) 47 Cal.3d 983, 1028 [no prejudice when factual question posed by omitted instruction was resolved adversely under different, properly-given instruction].)

Finally, the jury was also instructed with a lesser included offense of resisting an officer in the performance or attempted performance of duties without violence. (§ 148, subd. (a)(1).) This instruction permitted jurors to convict defendant of a misdemeanor rather than a felony, but the jury declined to do so. (See *ibid.*) Given the strength of the prosecution's case, the lack of evidence offered that officers engaged in excessive force, and the jury's conviction of the felony charge in the face of a lesser alternative, it is not reasonably probable that had the jury received the assault instruction, it would have decided the case more favorably for defendant. (See *Breverman*,

10

*supra*, 19 Cal.4th at p. 177 [courts may compare relative strength of evidence in evaluating prejudice].)

B. *Admission of Evidence of Possible Previous Weapon Discharge*

Defendant separately contends the court abused its discretion by admitting evidence that the officers had information that defendant had possibly discharged a gun in a prior incident. Defense counsel challenged the admission of the evidence under section 352, maintaining that it was prejudicial and unnecessary because the domestic violence call was a sufficient reason for them to detain defendant. The trial court noted the information was not being offered for the truth of its substance, but for its effect on the officers, information relevant to establishing the officers' states of mind upon their arrival. We agree.

We review a court's decision to admit or exclude evidence for an abuse of discretion. (*People v. Lewis* (2001) 25 Cal.4th 610, 637.) We will not disturb a court's ruling on appeal unless "the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) Evidence that is prejudicial tends to evoke an emotional bias against the defendant but have little effect on the issues. (*People v. Valdez* (2012) 55 Cal.4th 82, 134.)

Here the jury was asked to consider the reasonableness of the officers' behavior. (See CALCRIM Nos. 2652, 2656, & 2670.) Thus, the officers' states of mind were relevant to determining why they behaved as they did and whether their actions were excessive under the circumstances. Moreover, any prejudice was limited in two ways. First, on cross-examination, Officer Ulovec acknowledged that he did not know if the information was accurate, only that it was something he had to consider

11

when approaching the parties in the parking lot. This evidence was limited to its effect on the listener. Second, any prejudice that may have resulted would have been diminished by the additional evidence that Taitague was never charged with negligent discharge of a weapon, and there was no evidence presented that a firearm was found on defendant's person once he was arrested for resisting. Thus, the court did not abuse its discretion by admitting the evidence.

## C. *Section 667.5, Subdivision (b)*

At the time defendant was sentenced, section 667.5, subdivision (b) required trial courts to impose a one-year sentence enhancement for each true finding on an allegation the defendant served a separate prior prison term and had not remained free of custody for at least five years. (Former § 667.5, subd. (b).) Effective January 1, 2020, Senate Bill No. 136 amended section 667.5, subdivision (b) by limiting the one-year enhancement to prior prison terms for sexually violent offenses, as defined by Welfare and Institutions Code, section 6600, subdivision (b). (Stats. 2019, ch. 590, § 1; Cal. Const., art. IV, § 8, subd. (c); Gov. Code § 9600, subd. (a); *People v. Camba* (1996) 50 Cal.App.4th 857, 865 [statute enacted at regular session of Legislature generally becomes effective on January 1 of year following enactment].)

When the Legislature amends a statute so that it lessens the punishment, "[t]he amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*In re Estrada* (1965) 63 Cal.2d 740, 745.) Under the *Estrada* rule, " 'we will assume, absent evidence to the contrary, that the Legislature intended the amended statute to apply to all defendants whose judgments are not yet final

12

on the statute's operative date.' " (*People v. Hajek and Vo* (2014) 58 Cal.4th 1144, 1195-1196.) "The *Estrada* rule also applies to statutory amendments reducing the penalty for, or allowing a court to strike, an enhancement." (*People v. Jennings* (2019) 42 Cal.App.5th 664, 681-682 (*Jennings*).) A judgment is not final in this context as long as courts may still provide a remedy on direct review. (*In re Pine* (1977) 66 Cal.App.3d 593, 594.)

As we recently explained in *Jennings*, "[b]y eliminating section 667.5, subdivision (b) enhancements for all prior prison terms except those for sexually violent offenses, the Legislature clearly expressed its intent in Senate Bill No. 136 (2019-2020 Reg. Sess.) to reduce or mitigate the punishment for prior prison terms for offenses other than sexually violent offenses. [Citation.]" (*Jennings*, *supra*, 42 Cal.App.5th at p. 682.)

The prison prior for which Taitague received a one-year sentence was for vandalism (§ 594, subds. (a), (b)(1)), not a sexually violent offense, and judgment in the matter is not final. Thus, pursuant to the amended law, the one-year sentence must be struck. (See, e.g., *People v. Gastelum* (2020) 45 Cal.App.5th 757, 772.) Because the change in law affects only part of the sentence and the court did not impose the maximum sentence, we will remand for a full resentencing, " 'so the trial court can exercise its sentencing discretion in light of the changed circumstances.' " (*People v. Buycks* (2018) 5 Cal.5th 857, 893, quoting *People v. Navarro* (2007) 40 Cal.4th 668, 681.)

## DISPOSITION

We remand the matter and direct the trial court to strike the one-year enhancement under section 667.5, subdivision (b) and to resentence defendant. The court shall amend the abstract of judgment to reflect modification and forward an amended abstract of judgment to the

Department of Corrections and Rehabilitation.  In all other respects, the judgment is affirmed.

HUFFMAN, Acting P. J.

WE CONCUR:

HALLER, J.

O'ROURKE, J.