Filed 2/14/23 P. v. Jordan CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| THE PEOPLE, | C092147 |
| Plaintiff and Respondent, | (Super. Ct. No. STK-CR-FE-2018-0006959) |
| v. | |
| DEANDREW JORDAN, | |
| Defendant and Appellant. | |

On December 19, 2017, defendant Deandrew Jordan and two associates each fired a number of gunshots at other individuals in a Stockton strip mall parking lot. One victim, C.A., was struck and suffered a grave injury but survived. A jury found defendant guilty of 13 of 14 charged offenses, including attempted murder and two counts of active participation in a criminal street gang, and found true all enhancements alleged in connection with those 13 counts, including gang enhancement allegations. The

trial court sentenced defendant to an indeterminate term of 55 years to life plus a determinate term of 40 years 4 months.

On appeal, defendant asserts that as a result of changes made to Penal Code section 186.22 by the enactment of Assembly Bill No. 333 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 699), his gang enhancements must be stricken and the gang-related counts must be reversed and dismissed.[1]  He further asserts that, due to amendments to section 654 effected by Assembly Bill No. 518 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 441), the firearm use enhancements attached to counts 3 and 4 must be stayed.  We requested supplemental briefing on the effect, if any, of the enactment of Senate Bill No. 567 (2021-2022 Reg. Sess.) (Stats. 2021, ch. 731) on defendant's appeal.

Agreeing with defendant's first point to an extent, we shall reverse the gang-related counts and vacate the true findings on the gang-related enhancements.  However, we shall remand for the trial court to provide the prosecution with the opportunity to retry those counts and enhancements.  We further conclude that full resentencing is warranted following enactment of Senate Bill No. 567.  After the prosecution retries the gang offenses and enhancements, or declines to do so, the trial court shall conduct a full resentencing.  Defendant's contentions concerning Assembly Bill No. 518 are rendered moot.

## BACKGROUND

An information charged defendant with attempted premeditated murder (§§ 664, 187; count 1); three counts of assault with a semiautomatic firearm (§ 245, subd. (b); counts 2-4); possession of a firearm by a felon (§ 29800, subd. (a)(1); count 5); two counts of active participation in a criminal street gang (§ 186.22. subd. (a); counts 6 & 14); two counts of possession of a firearm with a prior violent felony conviction

---

[1]	Further undesignated statutory references are to the Penal Code.

(§ 29900, subd. (a)(1); counts 7 & 8); possession of ammunition by a prohibited person (§ 30305, subd. (a)(1); count 9); carrying a concealed firearm in a vehicle (§ 25400, subd. (a)(3); count 10); carrying a concealed firearm in a vehicle as an active participant in a criminal street gang (§ 25400, subd. (c)(3); count 11); and two counts of carrying a loaded firearm in a vehicle as an active participant in a criminal street gang (§ 25850, subd. (c)(3); counts 12 & 13). The information alleged defendant had been convicted of a prior serious felony within the meaning of sections 1170.12. subdivision (b) and 667, subdivision (d), and that he had served prior prison terms within the meaning of section 667.5, former subdivision (b). Additionally, the information contained the following allegations attached to the counts noted: defendant had a prior serious felony conviction within the meaning of section 667, subdivision (a) (counts 1-6); gang enhancement allegations (§ 186.22, subd. (b)(1); counts 1-5, 7-9); personal use of a firearm (§ 12022.53, subd. (b); count 1); personally and intentionally discharging a firearm proximately causing great bodily injury (§ 12022.53, subd. (d); count 1); a principal who violated section 186.22 used a firearm causing great bodily injury (§ 12022.53, subd. (e)(1); count 1); intentional and personal discharge of a firearm (§ 12022.53, subd. (c); count 1); and use of a firearm in the commission of a felony (§ 12022.5, subd. (a); counts 2-4).

### *The Prosecution*

#### *The Charged Offenses*

At approximately 11:37 a.m. on December 19, 2017, Stockton Police Officer Kristen McClure heard gunshots and drove towards the gunfire. Dispatch directed her to a shopping center where the Bianchi Market was located. When she arrived, she saw C.A. lying on the sidewalk. McClure lifted his sweatshirt and saw what appeared to be gunshot wounds, one on the right side of his back and a second on his stomach. McClure did not find any weapons on C.A. and did not see weapons or cartridge casings near him.

3

C.A. sustained a "through and through" gunshot wound to the abdomen. It was a critical, life-threatening injury.

At the scene, police found nine .45-caliber cartridge casings grouped near the nearby railroad tracks, 10 .40-caliber cartridge casings mostly grouped near Ray's Chicken and Fish Market, and 12 .223-caliber cartridge casings, which are typically fired from a rifle, mostly grouped in front of the African Beauty Supply store. There were no cartridge casings found in the area where C.A. had been.

Detective Sat Le reviewed video surveillance footage from the security system in the Bianchi Market. In the video, defendant pulled into the parking lot driving a dark Ford Fusion. He and two passengers, a juvenile named Kashmoney and another individual named Rodney, got out of the car, went into the market, and then came back out. Defendant and at least one of the passengers also talked with one or more people in the parking lot. At 10:37 a.m., the Ford Fusion departed.

Approximately five minutes later, the Ford Fusion returned. At some point, in video from the market, three males can be seen walking east in the direction of the railroad tracks. Subsequently, two of those three males can be seen running back to the west. Kashmoney can be seen holding a rifle. He can be seen shooting the rifle in front of a store and then running. Rodney pointed a gun and pulled the trigger. Defendant can also be seen entering the frame holding something in his hand. He then ran in the direction of the Ford Fusion. Subsequently, the Ford Fusion exited the parking lot very quickly. Le initially testified he could not discern what defendant had in his hand in the video. However, he was recalled and described viewing the video after zooming in. He testified defendant had a gun in his right hand.

Because Kashmoney shot the rifle, corresponding to the .223-caliber casings, and Rodney shot a gun in front of the market, corresponding to the location of the .40-caliber casings, Detective Le concluded defendant shot the .45-caliber rounds found near the railroad tracks.

4

A week later, on December 26, 2017, Officer Doug Sheldon performed a traffic stop of a dark Ford Fusion. Defendant was the driver. In a search of the vehicle, on the floor of the backseat area, law enforcement located a rifle underneath a sweatshirt and two cell phones. Law enforcement also found a Glock .40-caliber handgun under the front passenger seat.

The next day, Officer Robert Barrington performed a vehicle stop. The driver was James Ruiz. Barrington recovered from the car a .45-caliber Ruger P90 semiautomatic handgun with an extended magazine. He also recovered two cellular phones. In a video extracted from one of the phones, defendant lifted his waistband to show the butt of a firearm with a protruding magazine. That video was recorded on December 18, 2017, the day before the shooting. According to a firearms and ballistics expert, the .45-caliber cartridge casings found at the scene of the shooting were fired from the Ruger P90 recovered from the car driven by Ruiz.

*Gang-related Evidence*

Detective Julio Morales testified as an expert in African American gangs in Stockton. He testified the Northside Gangsta Crips (NSGC) criminal street gang, with approximately 160 members, was one of the larger Crips sects in Stockton. NSGC identified with the numbers four or 44, representing the 4400 block of Townehome, and the numbers five or 500 for the 500 block of Bianchi. They had corresponding hand signs for those numbers, as well as a hand sign representing the name Tribe. Morales testified the gang was frequently seen in the area of the Bianchi Market. NSGC's primary activities included homicide, attempted homicide, possession of weapons by a prohibited person, burglary, robbery, conspiracy to commit murder, and manslaughter.

With regard to a pattern of criminal gang activity, Morales testified, based on a certified record of conviction, that, on March 5, 2014, Michael Young, an active participant in NSGC, sustained a conviction of felon/addict in possession of a firearm. Based on another certified record of conviction, on June 6, 2016, Jeffrey Taylor, an active

5

participant in NSGC, sustained convictions of voluntary manslaughter and robbery in the second degree. Based on a third certified record of conviction, on August 19, 2016, James Ruiz, an active participant in NSGC, sustained convictions of felon/addict in possession of a firearm and active participation in a criminal street gang.

Morales testified defendant had a tattoo memorializing a NSGC member who had been killed. He also testified defendant appeared in a number of photographs in which individuals, including defendant, were throwing gang signs. Morales also testified defendant had a prior conviction on September 6, 2013, of robbery, a primary activity of NSGC.

Morales testified defendant was an active participant in NSGC. He also testified Kashmoney was a documented NSGC member, and that Morales had enough information to document Rodney as an NSGC member.

Morales opined that, if a crime was committed mirroring the facts of this case, that crime was committed in association with the gang. It would also benefit the gang in several ways. The members were protecting their neighborhood. The gang's reputation would be enhanced among gang members and the shooting would instill fear in rivals and the community. And the members proved their loyalty to the gang and to each other.

### The Defense

Kashmoney was 16 at the time of the shooting. He testified he fired a gun in the Bianchi Market parking lot. He further testified he was the only shooter. Kashmoney testified he acted in self-defense when someone shot at him. He had admitted to "[a]ssault with a semi rifle at three people."

A woman who was in the parking lot testified she saw someone by the railroad tracks firing a handgun. The shooter then ran north along the tracks. She could not see the shooter's face. She only saw his profile.

A resident of an apartment complex across the street from the Bianchi Market testified that, on December 19, 2017, she heard gunfire. When she looked out the

6

window, she saw a Black male running north on the train tracks, but she did not see his face or whether he had a gun.

### *Verdict and Sentencing*

The jury found defendant guilty on all counts with the exception of count 13, one of two counts charging him with carrying a loaded firearm in a vehicle as an active participant in a criminal street gang. The jury also found all enhancement and other allegations true.

Defendant having waived jury trial on the matter, the trial court found true the allegation that defendant had sustained a prior serious felony conviction and that he had served a prior prison term.[2] Prior to sentencing, the trial court denied defendant's requests to strike a strike prior (see *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497) and to strike firearm enhancements, but granted his request to strike all section 667, subdivision (a) enhancements. The trial court sentenced defendant to an indeterminate term of 15 years to life on count 1, doubled to 30 years to life, plus 25 years to life for the section 12022.53, subdivision (d) enhancement, for a total indeterminate term of 55 years to life. The court stayed execution of sentence on the other enhancements attached to count one. The court imposed an aggregate determinate term of 40 years 4 months, consisting of the upper term of nine years on count 3, doubled to 18 years, plus 10 years for the section 12022.5, subdivision (a) enhancement; one-third the midterm on count 4, doubled to four years, plus one year four months, one-third the midterm on the section 12022.5, subdivision (a) enhancement; one-third the midterm on count 7, doubled to one year four months, plus one year, one-third the midterm on the section 186.22, subdivision

---

[2]     In orally pronouncing sentence, the trial court neither imposed terms on the section 667.5, former subdivision (b) prior prison term enhancements nor struck those enhancements, and they do not appear on the abstract of judgment. However, because we are remanding for a full resentencing, the issue is moot.

(b)(1) enhancement; one-third the midterm on count 8, doubled to one year four months, plus one year, one-third the midterm on the section 186.22, subdivision (b)(1) enhancement; and one-third the midterm on count 9, doubled to one year four months, plus one year, one-third the midterm on the section 186.22, subdivision (b)(1) enhancement. The remainder of the terms were imposed and execution stayed pursuant to section 654.[3]

## DISCUSSION

### I

### *Assembly Bill No. 333*

Assembly Bill No. 333 "amended section 186.22 to impose new substantive and procedural requirements for gang allegations and the substantive offense of gang participation." (*People v. E.H.* (2022) 75 Cal.App.5th 467, 477; accord, *People v. Sek* (2022) 74 Cal.App.5th 657, 665 (*Sek*).) Defendant asserts that, following amendment of section 186.22 by Assembly Bill No. 333, his gang enhancements must be stricken and the gang crimes charged in counts 6, 11, 12, and 14 must be reversed and dismissed.

Preliminarily, defendant asserts, and the Attorney General agrees, that Assembly Bill No. 333 applies retroactively to this case. Consistent with a number of recently published cases, we agree Assembly Bill No. 333 applies retroactively to defendant's case, as his judgment was not final when Assembly Bill No. 333's amendments to section

---

[3]    Defendant filed his appeal in June 2020. Between November 2020 and March 2022, we granted defendant's request to augment the record and numerous requests for extensions of time to file his opening brief. We then granted four requests for an extension of time by the Attorney General and denied the fifth such request. We granted defendant's single request for an extension of time to file his reply brief. Defendant filed his reply brief on September 16, 2022. The matter was assigned to this panel on September 30, 2022. On October 26, 2022, we requested supplemental briefing on Senate Bill No. 567. Supplemental briefing was completed, and the appeal deemed fully briefed, on December 27, 2022.

186.22 became effective on January 1, 2022. (*People v. Rodriguez* (2022) 75 Cal.App.5th 816, 822; *Sek, supra*, 74 Cal.App.5th at pp. 666-667; *People v. Lopez* (2021) 73 Cal.App.5th 327, 343-344 (*Lopez*); see generally *In re Estrada* (1965) 63 Cal.2d 740.)

We shall discuss several subdivisions of section 186.22 relevant to the definitions of "criminal street gang" and "pattern of criminal gang activity." As amended by Assembly Bill No. 333, section 186.22, subdivision (f) provides: "As used in this chapter, 'criminal street gang' means an ongoing, organized association or group of three or more persons, whether formal or informal, having as one of its primary activities the commission of one or more of the criminal acts enumerated in subdivision (e), having a common name or common identifying sign or symbol, *and whose members collectively engage in, or have engaged in, a pattern of criminal gang activity*." (Italics added.) Section 186.22, subdivision (e)(1) provides, in part: " 'pattern of criminal gang activity' means the commission of, attempted commission of, conspiracy to commit, or solicitation of, sustained juvenile petition for, or conviction of, two or more of the following offenses, provided at least one of these offenses occurred after the effective date of this chapter, and the last of those offenses occurred within three years of the prior offense and within three years of the date the current offense is alleged to have been committed, *the offenses were committed on separate occasions or by two or more members*, the offenses commonly benefited a criminal street gang, and the common benefit from the offenses is more than reputational . . . ." That subdivision goes on to enumerate the offenses, the commission of two or more of which may qualify as a " 'pattern of criminal gang activity.' " (§ 186.22, subd. (e)(1)(A)-(Z).) To "benefit, promote, further, or assist means to provide a common benefit to members of a gang where the common benefit is more than reputational. Examples of a common benefit that are more than reputational may include, but are not limited to, financial gain or motivation, retaliation, targeting a

9

perceived or actual gang rival, or intimidation or silencing of a potential current or previous witness or informant." (§ 186.22, subd. (g).)

Defendant asserts the evidence failed to establish the requisite predicate offenses under section 186.22 as amended. The Attorney General responds that the predicate offenses still qualify under the law as amended and are established by overwhelming evidence in the record. Thus, the Attorney General asserts remand is unnecessary because the jury would have found the gang enhancement allegations true and found defendant guilty of the gang-related crimes beyond a reasonable doubt.

The changes Assembly Bill No. 333 made to section 186.22 pertinent here—the new requirement that gang members collectively, and not individually, engage or have engaged in a pattern of criminal gang activity and that the benefit to the gang must be more than reputational—"essentially add[] . . . new element[s]" to the statute, in effect rendering the instructions given to the jury in this case "deficient for omitting an element of an offense." (*Sek, supra*, 74 Cal.App.5th at p. 668.) Such an error implicates "the defendant's federal constitutional rights, and we review for harmless error under" *Chapman v. California* (1967) 386 U.S. 18, 24 (*Chapman*). (*Sek*, at p. 668.) "Under the *Chapman* standard, reversal is required unless 'it appears beyond a reasonable doubt that the error did not contribute to th[e] jury's verdict.' " (*Ibid*.)

We first consider the new requirement that gang members collectively, and not individually, engage or have engaged in a pattern of criminal gang activity. (§ 186.22, subd. (f).) Defendant asserts the prosecution failed to prove any of the predicate offenses were committed collectively by gang members as required by section 186.22 as amended by Assembly Bill No. 333. The Attorney General responds that, under the statute as amended, a pattern of criminal gang activity may be established either by individual gang members who individually committed qualifying crimes on separate occasions or by two or more gang members who committed a qualifying crime together on a single occasion.

10

"The proper interpretation of a statute is a question of law we review de novo." (*People v. Lewis* (2021) 11 Cal.5th 952, 961.) " ' "Under settled canons of statutory construction, in construing a statute we ascertain the Legislature's intent in order to effectuate the law's purpose. [Citation.] We must look to the statute's words and give them their usual and ordinary meaning. [Citation.] The statute's plain meaning controls the court's interpretation unless its words are ambiguous." [Citations.] If the words in the statute do not, by themselves, provide a reliable indicator of legislative intent, "[s]tatutory ambiguities often may be resolved by examining the context in which the language appears and adopting the construction which best serves to harmonize the statute internally and with related statutes. [Citation.]" [Citation.] . . . If the statute is ambiguous, we may consider a variety of extrinsic aids, including legislative history, the statute's purpose, and public policy.' " (*People v. Lucero* (2019) 41 Cal.App.5th 370, 394-395; accord, *Union of Medical Marijuana Patients, Inc. v. City of San Diego* (2019) 7 Cal.5th 1171, 1183-1184.)

The versions of section 186.22, subdivision (f) in effect at the time of the shooting and at the time of defendant's trial included the requirement that, to constitute a criminal street gang, the members must "*individually or collectively*" engage in, or have engaged in, a pattern of criminal gang activity. (§ 186.22, former subd. (f), italics added.) As stated, the amended version now requires that the "members *collectively* engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).) Also as stated, section 186.22, subdivision (e)(1) includes in the definition of a " 'pattern of criminal gang activity' " that "the offenses were committed on separate occasions or by two or more members."

Defendant relies on *Lopez, supra*, 73 Cal.App.5th 327. The court in *Lopez* stated: "The evidence that these gang members individually engaged in a pattern of criminal gang activity was sufficient at the time of trial to meet the requirements of section 186.22, but when it becomes effective, Assembly Bill 333 will require the prosecution to

11

prove collective, not merely individual, engagement in a pattern of criminal gang activity. No evidence was introduced at trial to establish that the crimes committed by Vasquez and de Los Angeles constitute collective criminal activity by the 18th Street gang." (*Id.* at pp. 344-345.)

More explicitly, in *People v. Delgado* (2022) 74 Cal.App.5th 1067 (*Delgado*), the court stated: "the requirement in amended section 186.22, subdivision (f), that gang members 'collectively engage' in a pattern of criminal gang activity, means the People were required to prove that two or more gang members committed each predicate offense . . . ." (*Id.* at p. 1072.) The court rejected the Attorney General's contention that "proof that individual gang members committed the predicate offenses on separate occasions is sufficient to show the gang members 'collectively' engaged in a pattern of criminal activity." (*Id.* at p. 1073.) The court read "the term 'collectively' in a commonsense manner to mean what it says—committed by more than one person, and not, as argued by the People, individually but on a different day." (*Id.* at pp. 1088-1089.) The court bolstered its reasoning by resort to legislative intent. (*Id.* at p. 1089.)

The Attorney General acknowledges *Lopez* and *Delgado*, but asserts they were wrongly decided. Instead, the Attorney General relies on *People v. Clark* (2022) 81 Cal.App.5th 133, review granted October 19, 2022, S275746 (*Clark*). *Clark* disagreed with *Lopez* and *Delgado*, concluding that "a pattern of criminal gang activity may be established by (1) two gang members who separately committed crimes on different occasions, or (2) two gang members who committed a crime together on a single occasion." (*Id.* at pp. 145-146.) *Clark* criticized *Delgado*, asserting it failed to adequately consider the statute's plain language or identify any ambiguity in the language of the statute before resorting to legislative intent. (*Id.* at pp. 144-145.) *Clark* also concluded that, under the *Delgado* analysis, "the first alternative in section 186.22, subdivision (e)(1) [(that 'the offenses were committed on separate occasions')] is rendered surplusage." (*Id.* at p. 145.)

12

The Supreme Court has granted review in *Clark* to address whether the prosecution may "meet their burden of establishing a 'pattern of criminal gang activity' under . . . section 186.22 as amended by Assembly Bill No. 333 (Stats. 2021, ch. 699) by presenting evidence of individual gang members committing separate predicate offenses," or if instead the prosecution must "provide evidence of two or more gang members working in concert with each other during each predicate offense." (*People v. Clark,* order granting review issued Oct. 19, 2022, S275746.) Pending review, the Court of Appeal's decision in *Clark* "may be cited, not only for its persuasive value, but also for the limited purpose of establishing the existence of a conflict in authority that would in turn allow trial courts to exercise discretion under *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 456, to choose between sides of any such conflict." (*Ibid.*)

With the issue not yet decided by the Supreme Court, we find *Delgado* the more persuasive authority. We agree with *Delgado* that the term "collectively engage" in a pattern of criminal gang activity (§ 186.22, subd. (f)) has a plain, commonsense meaning as involving more than one individual. (*Delgado, supra*, 74 Cal.App.5th at pp. 1088-1089.)

To the extent there is any ambiguity in the statute's terms, we conclude that the legislative intent resolves any ambiguity in favor of an interpretation requiring that each qualifying predicate offense must be committed "collectively" by two or more gang members.

As the *Delgado* court noted: "Our reading is consistent with the Senate Rules Committee's analysis of Assembly Bill 333, which described the amendment to section 186.22, subdivision (f), as requiring 'that engagement in a pattern of criminal activity must be done by members collectively, not individually.' " (*Delgado, supra*, 74 Cal.App.5th at p. 1089, quoting Sen. Rules Com., Off. of Sen. Floor Analyses, 3d reading analysis of Assem. Bill No. 333 (2021-2022 Reg. Sess.) as amended July 13, 2021, p. 4.) Similarly, the analysis of the Assembly Committee on Public Safety noted

13

that section 186.22 as amended by Assembly Bill No. 333 "would also require the prosecution to prove the members collectively, rather than individually, engage in, or have engaged in a 'pattern of criminal gang activity.' " (Assem. Com. on Pub. Safety, Rep. on Assem. Bill No. 333 (2021-2022 Reg. Sess.) as amended Mar. 30, 2021, p. 8.)

More broadly, according to the Senate Committee on Appropriations, Assembly Bill No. 333 would, among other things, "narrow the conduct that is prosecutable, and lead to enhanced sentences, as criminal street gang activity . . . ." (Sen. Com. on Appropriations, Rep. on Assem. Bill No. 333 (2021-2022 Reg. Sess.) Aug. 13, 2021, p. 1.) That committee also noted that there could be significant savings as a result of individuals being sentenced to shorter terms, or not sentenced to prison, based on "the narrowing of what constitutes a 'pattern of criminal gang activity' under this measure." (*Ibid*.)

Even more broadly, as stated in the legislative findings and declarations, the Legislature enacted Assembly Bill No. 333 in the context, and necessarily to ameliorate the fact, that "[c]urrent gang enhancement statutes criminalize entire neighborhoods historically impacted by poverty, racial inequality, and mass incarceration as they punish people based on their cultural identity, who they know, and where they live." (Stats. 2021, ch. 699, § 2(a).) The legislative findings and declarations also note that "[p]eople frequently receive gang enhancements based on the conduct of other people whom they have never even met." (Stats. 2021, ch. 699, § 2(d)(7).)

We conclude that accepting the Attorney General's, and the *Clark* court's, interpretations would be contrary to the stated legislative intent behind Assembly Bill No. 333. (See *Delgado, supra*, 74 Cal.App.5th at p. 1089.) The Attorney General asserts that a reading consistent with *Delgado* would render the language in section 186.22, subdivision (e)(1) that "the offenses were committed on separate occasions" surplusage. However, a reading consistent with the Attorney General's position and *Clark, supra*, 81 Cal.App.5th at page 145, review granted, would effectively read out of the statute the

14

language requiring that, to constitute a " 'criminal street gang,' " the members must "collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).) Given the plain legislative intent, we agree with the *Delgado* interpretation.

Having concluded that, as amended, section 186.22 requires that each predicate offense be committed by two or more gang members acting collectively, rather than by individual gang members on separate occasions, we turn to consideration of the predicate offenses here. Gang expert Julio Morales testified about three predicate offenses committed on three separate occasions. Michael Young committed one offense, Jeffrey Taylor committed another, and James Ruiz committed the third. There is no indication in Morales's testimony that any other gang members were involved in each offense.[4]

Because Young's and Ruiz's potential predicate offenses were each committed by an individual NSGC member, rather than by two or more members collectively, they do not satisfy the predicate offense/pattern of criminal gang activity requirement of section 186.22 as amended by Assembly Bill No. 333. And, for the reasons stated, Taylor's

---

[4] We have reviewed the certified records of conviction for the predicate offenses. In those of Young and Ruiz, there is no indication any other gang members were involved. As for Taylor, two other individuals were charged in his case. Gang enhancements (§ 186.22, subd. (b)(1)) were alleged against all three. However, no specific gang was identified. Taylor and another individual were charged with active participation in a criminal street gang (§ 186.22, subd. (a)), but, again, the gang was not identified. Taylor was not convicted of active participation in a criminal street gang and did not admit any gang enhancement allegation. In connection with his robbery conviction, he admitted to a firearm enhancement allegation (§ 186.22, subds. (e)(1), (b)) that included, among its elements, that the "person violated subdivision (b) of Section 186.22." (§ 12022.53, subd. (e)(1).) However, once again, no specific gang was identified. The records of conviction, if there are any, of the other individuals do not appear in this record. In any event, even if Taylor's conviction could qualify as a predicate offense, which, on this record, it could not, there is no second qualifying predicate offense. (See § 186.22, subd. (e)(1) [requirement of two or more predicate offenses].)

convictions also do not provide a qualifying predicate offense.[5]  Additionally, under section 186.22 as amended, the currently charged offenses no longer may be considered as one of the predicate offenses.  (§ 186.22, subd. (e)(2).)

The trial court instructed the jury with the former version of CALCRIM No. 1400. That instruction did not inform the jury that, to find the existence of a criminal street gang, the jury had to find, among other things, that the gang's members "collectively engage in, or have engaged in, a pattern of criminal gang activity." (§ 186.22, subd. (f).) Instead, it instructed the jurors they had to find that the gang's "members, whether acting alone or together, engage in or have engaged in a pattern of criminal gang activity." Following the enactment of Assembly Bill No. 333, this instruction no longer represents valid law.  It cannot be said, beyond a reasonable doubt, that this deficiency in the court's instructions did not contribute to the jury's verdict because, under the instructions as given, the jury could have found defendant guilty or made true findings inconsistent with the law as amended.[6]  (See *Chapman, supra*, 386 U.S. at p. 24.)

Defendant asserts that the gang enhancements and substantive gang crimes must be dismissed.  However, as stated in *Sek*, our decision does not bar the prosecution from retrying defendant on the gang enhancements and substantive gang offenses on remand. " 'Because we do not reverse based on the insufficiency of the evidence required to prove a violation of the statute as it read at the time of trial, the double jeopardy clause of the

---

[5]    See footnote 4.

[6]    Defendant also asserts there was no evidence that the predicate offenses benefited the gang in a way that was more than reputational as required by section 186.22 as amended by Assembly Bill No. 333. (See § 186.22, subds. (e)(1), (g).)  The Attorney General asserts this contention is not properly before us as it was not made under a separate heading with citations to the record. (See Cal. Rules of Court, rules 8.204(a)(1)(B) & 8.360(a).)  Ultimately, we need not reach the issue given our determination on the "collectively engage in" issue. (§ 186.22, subd. (f).)

Constitution will not bar a retrial. [Citations.] " 'Where, as here, evidence is not introduced at trial because the law at that time would have rendered it irrelevant, the remand to prove that element is proper and the reviewing court does not treat the issue as one of sufficiency of the evidence.' " ' "[7] (*Sek, supra*, 74 Cal.App.5th at p. 669; see also *People v. Rodriguez, supra*, 75 Cal.App.5th at p. 823, fn. 19 ["retrial permitted where posttrial change in law invalidates certain evidence because prosecution proved its 'case under the law as it then stood' having 'had little or no reason to produce other evidence of guilt' "], quoting *People v. Shirley* (1982) 31 Cal.3d 18, 71.)

Accordingly, we shall reverse the convictions on counts 6 and 14 convicting defendant of active participation in a criminal street gang (§ 186.22, subd. (a)); vacate the true finding on the gang-related firearm enhancement on count 1 (§ 12022.53, subd. (e)(1)); vacate the true findings on the gang enhancement allegations on counts 1-5 and 7-9 (§ 186.22, subd. (b)(1)); reverse the conviction on count 11, carrying a concealed firearm in a vehicle as an active participant in a criminal street gang (§ 25400, subd. (c)(3)); and reverse the conviction on count 12, carrying a loaded firearm in a vehicle as an active participant in a criminal street gang (§ 25850, subd. (c)(3)). The prosecution will have the option to retry these counts and enhancements on remand.

## II

### *Senate Bill No. 567*

During the pendency of this appeal, the Governor signed Senate Bill No. 567, effective January 1, 2022, which made changes to section 1170 affecting trial courts' sentencing discretion. Senate Bill No. 567 "applies retroactively . . . as an ameliorative change in the law applicable to all nonfinal convictions on appeal." (*People v. Flores*

---

**7**     Defendant has not raised a sufficiency of the evidence challenge on this appeal.

17

(2022) 73 Cal.App.5th 1032, 1039, fn. omitted; accord, *People v. Zabelle* (2022) 80 Cal.App.5th 1098, 1109; see generally *In re Estrada, supra*, 63 Cal.2d 740.)

We requested supplemental briefing on Senate Bill No. 567.[8] In their supplemental briefing, defendant and the Attorney General focus on section 1170, subdivision (b)(1) and (2), added by Senate Bill No. 567. (Stats. 2021, ch. 731, §§ 1.3, 3(c).) These provisions generally limit a trial court's ability to impose upper-term sentences unless aggravating circumstances have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or by the court in a court trial. (§ 1170, subd. (b)(1), (2).) An exception to this general rule is evidence of the defendant's prior convictions established by certified records of conviction, which need not be submitted to a jury. (§ 1170, subd. (b)(3).)

We conclude Senate Bill No. 567 requires remand for resentencing. We reach this conclusion, however, for reasons the parties did not address in their supplemental briefing, though they had the opportunity to do so.[9] (See Gov. Code, § 68081 ["Before . . . a court of appeal . . . renders a decision in a proceeding other than a summary denial of a petition for an extraordinary writ, based upon an issue which was not proposed or briefed by any party to the proceeding, the court shall afford the parties an opportunity to present their views on the matter through supplemental briefing."]; see also *People v. Alice* (2007) 41 Cal.4th 668, 677 [Gov. Code, § 68081 "does not require that a party actually have briefed an issue; it requires only that the party had the opportunity to do so"].)

---

[8] Our request for supplemental briefing stated: "Senate Bill No. 567 (2021-2022 Reg. Sess.), effective January 1, 2022, among other things, amended . . . section 1170 and incorporated amendments to that section made by Assembly Bill No. 124 (2021-2022 Reg. Sess.) and Assembly Bill No. 1540 (2021-2022 Reg. Sess.). What effect, if any, do these amendments have on defendant's appeal?"

[9] See footnote 8.

In addition to the changes described *ante*, Senate Bill No. 567 added subdivision (b)(6) to section 1170.[10] (Stats. 2021, ch. 731, §§ 1.3, 3(c).) Insofar as relevant here, section 1170, as amended, provides: "Notwithstanding paragraph (1), and unless the court finds that the aggravating circumstances outweigh the mitigating circumstances that imposition of the lower term would be contrary to the interests of justice, the court shall order imposition of the lower term if any of the following was a contributing factor in the commission of the offense: [¶] . . . [¶] (B) The person is a youth, or was a youth as defined under subdivision (b) of Section 1016.7 at the time of the commission of the offense." (§ 1170, subd. (b)(6).) Section 1016.7, subdivision (b) defines a " 'youth' " as "any person under 26 years of age on the date the offense was committed."

At the time of the charged crimes, defendant was 21 years old. As such, he was a youth within the meaning of sections 1016.7, subdivision (b) and 1170 subdivision (b)(6)(B).

Prior to imposing sentence, the trial court briefly addressed the need for a *Franklin* hearing for defendant as a youthful offender.[11] However, there is no indication in the record that the court otherwise considered defendant's youthfulness in imposing sentence and it certainly did not consider whether the lower term was appropriate under section 1170, subdivision (b)(6).

The trial court sentenced defendant without the benefit of this amendment to section 1170, and the court's ruling was therefore an abuse of discretion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 378 [court that is unaware of the scope of its discretion necessarily abuses that discretion].) " 'Defendants are entitled to sentencing decisions

---

**10**     This particular change was effected by Senate Bill No. 567 incorporating amendments to section 1170 made by Assembly Bill No. 124 (2021-2022 Reg. Sess.). (Stats. 2021, ch. 731, §§ 1.3, 3(c).)

**11**     *People v. Franklin* (2016) 63 Cal.4th 261.

made in the exercise of the "informed discretion" of the sentencing court.' " (*People v. Gutierrez* (2014) 58 Cal.4th 1354, 1391.) " 'A court which is unaware of the scope of its discretionary powers can no more exercise that "informed discretion" than one whose sentence is or may have been based on misinformation regarding a material aspect of a defendant's record.' [Citation.] In such circumstances, . . . the appropriate remedy is to remand for resentencing unless the record 'clearly indicate[s]' that the trial court would have reached the same conclusion 'even if it had been aware that it had such discretion.' " (*Ibid.*)

Here, the record does not clearly indicate the trial court would have made the same sentencing choices had it been aware of the scope of its discretion. Accordingly, we shall remand for full resentencing. (*People v. Flores, supra*, 73 Cal.App.5th at p. 1039 [where the defendant was under 26 at time of the crime, appropriate approach is to "remand to the trial court to decide under the newly amended law whether defendant is entitled to the lower term"]; see also *People v. Valenzuela* (2019) 7 Cal.5th 415, 424-425 ["full resentencing rule allows a court to revisit all prior sentencing decisions when resentencing a defendant"], citing *People v. Buycks* (2018) 5 Cal.5th 857, 893 & *People v. Navarro* (2007) 40 Cal.4th 668, 681.) In light of our determination, we need not address the parties' arguments addressed to section 1170, subdivision (b)(1)-(3).

### III

### *Assembly Bill No. 518*

Defendant asserts that, due to amendments to section 654 made by Assembly Bill No. 518, the firearm use enhancements attached to counts 3 and 4 must be stayed. We are vacating defendant's sentence and remanding for a full resentencing, either after retrying defendant on the gang-related counts and enhancements or after the prosecution elects not to do so. As a result, the parties' contentions concerning Assembly Bill No. 518 have been rendered moot.

20

## DISPOSITION

We reverse the convictions on counts 6 and 14, active participation in a criminal street gang (§ 186.22, subd. (a)), count 11, carrying a concealed firearm in a vehicle as an active participant in a criminal street gang (§ 25400, subd. (c)(3)), and count 12, carrying a loaded firearm in a vehicle as an active participant in a criminal street gang (§ 25850, subd. (c)(3)). We vacate the true findings on the gang-related firearm enhancement allegation on count 1 (§ 12022.53, subd. (e)(1)), and the gang enhancement allegations on counts 1-5 and 7-9 (§ 186.22, subd. (b)(1)). Defendant's sentence is vacated. We remand the matter to the trial court to provide the prosecution with the opportunity to retry counts 6, 11, 12, and 14, as well as all of the section 186.22, subdivision (b)(1) enhancement allegations and the 12022.53, subdivision (e)(1) enhancement allegation attached to count 1 under the law as amended by Assembly Bill No. 333. At the conclusion of retrial or at such time as the prosecution elects not to retry the reversed counts and vacated enhancement allegations, the trial court shall provide defendant with a full resentencing in compliance with section 1170 as amended by Senate Bill No. 567 as

well as section 654 as amended by Assembly Bill No. 518. In all other respects, the judgment is affirmed.

/s/
HOCH, J.*

We concur:

/s/
HULL, Acting P. J.

/s/
MAURO, J.

---

* Retired Associate Justice of the Court of Appeal, Third Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.