Filed 5/30/24  P. v. Hemsley CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DAVID JEFFERY HEMSLEY,<br><br>    Defendant and Appellant. | E079829<br><br>(Super. Ct. No. FWV19002041)<br><br>OPINION |

APPEAL from the Superior Court of San Bernardino County. Charles J. Umeda, Judge. Affirmed in part, reversed in part with directions.

Joanna Rehm, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Charles C. Ragland, Assistant Attorney General, Christopher P. Beesley, and Britton B. Lacy, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I.

## INTRODUCTION

James M. believed defendant and appellant David Hemsley was having an affair with his girlfriend. The two men engaged in a fistfight, leading to defendant firing two shots at James, one of which hit him in the chest.

A jury found defendant guilty of unlawful possession of a firearm by a felon (count 2), unlawful possession of ammunition by a felon (count 3), and assault with a semiautomatic firearm (count 4). The jury also found true allegations that defendant personally used a firearm and inflicted great bodily injury (GBI) in the commission of the assault. In addition, the jury found that defendant had a prior burglary conviction, which qualified as a strike, and a prior serious felony enhancement adding a five-year sentence (nickel prior). The jury acquitted defendant of count 1, making a criminal threat. The court sentenced defendant to a determinate prison term of 26 years, eight months. This court affirmed the judgment of conviction but reversed the sentence. On remand, defendant was sentenced to 20 years, four months.

In this second appeal, defendant contends the trial court erred in denying his request under Penal Code section 1385, subdivision (c)(2)(B) and (C),[1] to strike his gun use and GBI enhancements. Defendant also contends the trial court erred in refusing to reconsider his *Romero*[2] motion to strike his 30-year-old burglary conviction.

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal. 4th 497, 529-530.

2

We reject defendant's contention that the trial court erred in not dismissing his firearm use and GBI enhancements. The parties and this court agree the trial court erred in not reconsidering defendant's *Romero* motion during resentencing. We therefore reverse defendant's sentence and remand the matter for that purpose. The judgment of conviction and sentence are affirmed in all other regards.

## II.

## FACTS[3]

Dwight B. and Kimberly L. lived with their two children in an upstairs apartment, which had a loft. Defendant rented the upstairs loft from Dwight. Unbeknownst to Dwight, Kimberly had been having an affair with James. During the afternoon of June 29, 2019, defendant was in his loft room. James went upstairs to the loft, knocked on defendant's door, identified himself, and said he needed to talk. James believed defendant had been "messing around" with Kimberly, his girlfriend for a few months. Defendant opened the door and James entered. Defendant tried to push James out of the loft. James punched defendant in the face. The two men scuffled on the ground for about a minute and then stopped. James told defendant he thought defendant was "messing around" with Kimberly. As James got up, left the apartment, and descended the inside stairs, defendant shot him in the back. Defendant fired again at James as James opened

---

[3] This summary of the facts is taken from the statement of facts included in the statement of facts in our previous decision in this case (*People v. Hemsley* (Mar. 10, 2022, as modified Apr. 8, 2022, E074782) [non.pub. opn.]).

the apartment door and descended the outside stairs. James fled and yelled to a neighbor to call 911.

The police found a spent shell casing on the carpet about three or four feet from the bottom of the stairs leading to the loft. The police also found in the loft a gun holster on the ground and a second casing downstairs, outside the apartment. The police apprehended defendant after he fled, and found a loaded semiautomatic pistol under his thigh. The trauma surgeon who treated James testified a bullet entered James's right side near his back and made a hole in James's heart chamber. Defendant testified that he wanted to shoot James "'in the heat of the f—ing moment,'" in anger, because James beat him up for no reason. He denied sleeping with Kimberly. Defendant also testified he shot James because he was in fear for his life. James had a criminal history, which included convictions for criminal threats in 1997 and burglary in 1996 and 2010.

### III.

### PROCEDURAL BACKGROUND

During defendant's first appeal (*People v. Hemsley*, *supra*, E074782), defendant argued, among other things, that the trial court erred in concluding it lacked discretion to strike his nickel prior under section 1385, and the court erred under section 654 in imposing separate sentences for his convictions for unlawful possession of a firearm and possession of ammunition. This court issued its decision on March 10, 2022, affirming the judgment of conviction but reversing defendant's sentence, with directions that the

4

trial court (1) stay his sentence on count 3 under section 654, and (2) exercise its discretion regarding whether to strike defendant's nickel prior under section 1385.

During resentencing on September 16, 2022, the trial court amended defendant's sentence as directed by this court. In addition, during resentencing, at defendant's request, the trial court considered the issue of whether under recently amended section 1385, subdivision (c), the court was required to strike defendant's nickel prior and enhancements for gun use and GBI.

The trial court concluded that it was not required to give conclusive weight to the mitigating circumstances listed in section 1385, subdivision (c)(2), when considering whether to dismiss defendant's enhancements. Instead, it was required to give them "great weight." (§ 1385, subd. (c)(2).) In doing so, the court dismissed the nickel prior but denied defendant's request to dismiss the gun use and GBI enhancements. The trial court also concluded that defendant's renewed *Romero* motion was not properly before the court because the trial court had previously denied the motion during the original sentencing hearing, and in the first appeal, this court affirmed the ruling. The trial court therefore did not reconsider defendant's *Romero* motion during resentencing. During resentencing on September 16, 2022, the trial court imposed a new reduced sentence of 20 years, four months. Defendant appeals the sentence.

SENTENCE ENHANCEMENTS

Defendant contends that during resentencing the trial court erred in imposing the gun use and GBI enhancements.  Defendant argues the trial court was required to dismiss these enhancements under amended section 1385, subdivision (c)(2)(B) and (C).  The People argue amended section 1385 reserved for the trial court discretion to dismiss or impose the enhancements.  The People acknowledge that it must "afford great weight" to a mitigating circumstance, but argue the applicable statutory language does not mandate dismissal of an enhancement when it is not in the furtherance of justice.

A. *Standard of Review*

We review the trial court's interpretation of section 1385 de novo.  (*People v. Mendoza* (2023) 88 Cal.App.5th 287, 294.)  We apply the abuse of discretion standard to determine whether the trial court properly exercised its discretion when it denied defendant's request to dismiss his enhancements under section 1385, subdivision (c)(1)(B) and (C).  (See *People v. Williams* (1998) 17 Cal.4th 148, 162 [dismissal of prior serious felony conviction finding pursuant to section 1385 reviewed for abuse of discretion].)

In construing section 1385, subdivision (c) generally, and subdivision (c)(2)(B) and (C) specifically, we are guided by long-established principles of statutory interpretation.  Our objective "is to determine the Legislature's intent so as to effectuate the law's purpose.  [Citation.]  We begin by examining the statute's words, giving them a

plain and commonsense meaning.  [Citation.]  We do not . . . consider the statutory language 'in isolation.'"  (*People v. Murphy* (2001) 25 Cal.4th 136, 142.)  Instead, "we construe the words in question '"in context, keeping in mind the nature and obvious purpose of the statute"'" as a whole.  (*Ibid*.)

"If the statutory language is unambiguous, then its plain meaning controls.  If, however, the language supports more than one reasonable construction, then we may look to extrinsic aids, including the ostensible objects to be achieved and the legislative history."  (*People v. Cole* (2006) 38 Cal.4th 964, 975.)  Further, when the statutory language is ambiguous, "'we "'select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.'"'"  (*People v. Lipscomb* (2022) 87 Cal.App.5th 9, 17 (*Lipscomb*).)

B. *Applicable Statutory Law*

Section 1385, subdivision (c)(1) states:  "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so, except if dismissal of that enhancement is prohibited by any initiative statute."

Subdivision (c)(2) states:  "In exercising its discretion under this subdivision, the court shall consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in subparagraphs (A) to (I) are present.  Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would

7

endanger public safety." Subdivision (c)(2) defines "endanger public safety" as "a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (§ 1385, subd. (c)(2).)

The relevant mitigating circumstances include the following two circumstances: "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed."

C. *Dismissal of Defendant's Enhancements Was Not Mandatory*

Defendant argues the word "shall" in section 1385, subdivision (c)(2)(B) and (C), required the trial court to dismiss one or more of his enhancements. We disagree.

We begin by examining the plain language of section 1385. First, while the term "shall" in a statute is generally mandatory, we cannot consider this word in isolation; instead, we must consider where it fits in the context of the entire statute. (*People v. Anderson* (2023) 88 Cal.App.5th 233, 239, review granted Apr. 19, 2023, S278786 (*Anderson*); *People v. Walker* (2022) 86 Cal.App.5th 386, 396, review granted March 22, 2023, S278309 (*Walker*).) With regard to "the use of the word 'shall,' it should not be assumed that every statute that uses that term is mandatory. [Citations.] 'Neither the word "may," nor the word "shall," is dispositive.' [Citation.] The context of the language, as well as other indicia of legislative intent, must be considered. [Citation.]" (*People v. Lara* (2010) 48 Cal.4th 216, 227.)

8

Construed as a whole, section 1385, subdivision (c) "makes clear that all the mitigating circumstances listed in subdivision (c)(2) merely guide the court's discretion in determining whether a dismissal is in furtherance of justice." (*People v. Mazur* (2023) 97 Cal.App.5th 438, 445, review granted Feb. 14, 2024, S283229 (*Mazur*).) "Subdivision (c)(1) first sets forth the controlling 'furtherance of justice' standard for dismissal. Subdivision (c)(2) then states that the court must give great weight to the presence of any one or more of the nine listed mitigating circumstances '[i]n exercising its discretion' whether to dismiss. Subdivision (c)(3) confirms the discretionary nature of this decision by stating that the court 'may exercise its discretion at sentencing' but is not prevented 'from exercising its discretion' earlier in the proceedings.[4] We therefore conclude that the 'shall be dismissed' language of the mitigating circumstances in subdivisions (c)(2)(B) and (C)—read in the context of the statute as a whole—only requires the court to dismiss the enhancement if it first finds that dismissal is 'in the furtherance of justice.' (§ 1385, subd. (c)(1).)" (*Ibid.*)

Additionally, section 1385, subdivision (c)(2), does not say such proof of a mitigating circumstance automatically mandates dismissal of an enhancement if a defendant proves a mitigating circumstance. Rather, such proof "*weighs greatly in favor of* dismissing the enhancement." (§ 1385, subd. (c)(2), italics added.) As stated in *Walker*, *supra*, 86 Cal.App.5th at page 397, regarding mitigating circumstance

---

[4] Section 1385, subdivision (c)(3) states: "While the court may exercise its discretion at sentencing, this subdivision does not prevent a court from exercising its discretion before, during, or after trial or entry of plea."

subdivision (c)(2)(B), "[i]f we were to read the phrase appended to the multiple enhancements mitigating factor[5] as *automatically* mandating dismissal of all but one enhancement whenever multiple enhancements exist, then the existence of multiple enhancements would not 'weigh greatly' in favor of dismissal—it would weigh *dispositively.* But that is not what the statute says, and we are not allowed to rewrite the statute." (*Walker*, *supra*, at p. 397, review granted.) This is equally true regarding the mitigating circumstance in subdivision (c)(2)(C) (imposing an enhancement which results in the sentence exceeding 20 years).

The legislative history of Senate Bill No. 81 (Sen. Amend. to Sen. Bill No. 81 (2021-2022 Reg. Sess.) Apr. 27, 2021) also supports construing the mitigating circumstances in section 1385, subdivision (c)(2)(B) and (C), as not mandating dismissal of enhancements. "The initial drafts of the bill stated, 'There shall be a presumption that it is in the furtherance of justice to dismiss an enhancement upon a finding that any of the circumstances in subparagraphs (A) to (I), inclusive, are true. . . . However, the Assembly removed the presumption, replacing it with more flexible discretionary language in section 1385, subdivision (c)(2).'" (*Anderson*, *supra*, 88 Cal.App.5th at p. 240, review granted; see also *Lipscomb*, *supra*, 87 Cal.App.5th at pp. 17-21.)

---

[5] We refer to the mitigating circumstances listed in subparagraphs (A) to (I) of section 1385, subdivision (c)(2), as "mitigating circumstances" and other mitigating sentencing factors, such as those listed in California Rules of Court, rule 4.423, as "mitigating factors."

In a letter to the Secretary of the Senate that was placed by unanimous consent in the Senate Daily Journal, Senate Bill No. 81's author wrote, "'I respectfully request the following letter be printed in the Senate Daily Journal expressing our intent with respect to this measure: [¶] . . . [¶] [A]mendments taken on [August] 30, 2021 remove the presumption that a judge must rule to dismiss a sentence enhancement if certain circumstances are present, and instead replaces that presumption with a "great weight" standard where these circumstances are present. The retention of the word "shall" in [section] 1385[, subdivision] (c)(3)(B) and (C)[] should not be read as a retention of the previous presumption language—the judge's discretion is preserved [in section 1385, subdivision (c)(2)].' (Sen. Nancy Skinner, letter to Secretary of the Sen. (Sept. 10, 2021), 121 Sen. J. (2021-2022 Reg. Sess.) p. 2638.)"[6] (*Anderson*, *supra*, 88 Cal.App.5th at p. 240, fn. omitted, review granted; see also *Lipscomb*, *supra*, 87 Cal.App.5th at pp. 17-21; *Walker*, *supra*, 86 Cal.App.5th at pp. 397-398, review granted.)

"Thus, not only did the Legislature remove the presumption in favor of dismissal, instead explicitly stating the court had discretion to dismiss enhancements, but also the author of Senate Bill [No.] 81 anticipated the precise argument [raised here]—that the word 'shall' in section 1385, [subdivision] (c)(2)(B) . . . could be misconstrued as a mandate to automatically dismiss applicable enhancements. The author's unambiguous

---

[6] "The version of section 1385 effective January 1, 2022, included mitigating circumstances (A) through (I) within subdivision (c)(3). (Stats. 2021, ch. 721, § 1.) Effective June 30, 2022 the mitigating circumstances are listed in subdivision (c)(2). (Stats. 2022, ch. 58, § 15.)" (*Anderson*, *supra*, 88 Cal.App.5th at p. 240, fn. 8, review granted.)

rejection of this interpretation, placed in the official record with the unanimous consent of her colleagues, supports our conclusion that a trial court is not required to dismiss all but one enhancement . . . but rather that the trial court has discretion in deciding whether to do so." (*Anderson*, *supra*, 88 Cal.App.5th at pp. 240-241, review granted; see also *Lipscomb*, *supra*, 87 Cal.App.5th at pp. 17-21.) Such is also the case as to the mitigating circumstance in subdivision (c)(2)(C).

In rejecting the court's conclusion in *Walker*, *supra*, 86 Cal.App.5th at pages 391, 397-398, that under section 1385, subdivision (c), there is a presumption in favor of dismissing enhancements, the court in *People v. Ortiz* (2023) 87 Cal.App.5th 1087, 1090, review granted April 12, 2023, S278894 (*Ortiz*), reasoned that under section 1385, "trial courts have long had broad discretion to dismiss a charge or allegation 'in furtherance of justice.' [Citation.] As the California Supreme Court has recognized, however, 'the "concept" of "furtherance of justice" . . . is "' amorphous.'"' [Citation.] The Legislature in Senate Bill No. 81 . . . has now given greater definition to the concept by enumerating certain mitigating circumstances which the trial court—'[i]n its exercise of discretion'— is to 'weigh[ ] greatly' in favor of dismissal of an enhancement, unless 'dismissal of the enhancement would endanger public safety.' (§ 1385[, subd.] (c)(2).)" The defendant in *Ortiz* requested the court to interpret the great weight contemplated by section 1385[, subdivision] (c)(2) as amounting to a presumption favoring dismissal that is rebuttable only by a danger to public safety. The *Ortiz* court construed "the plain language of the statute and the legislative history as reflecting the Legislature's

considered rejection of such a presumption." (*Ortiz*, *supra*, at p.1090.)  The issue of whether there is a presumption is under review by the California Supreme Court in *Walker*, *supra*, 86 Cal.App.5th at page 396; *Anderson*, *supra*, 88 Cal.App.5th at page 239, review granted; and *Ortiz*, *supra*, at page 1090.  Regardless of whether there was such a presumption, the record supports the trial court's finding that it was rebutted by substantial evidence defendant posed a danger to public safety.

California Rules of Court, rule 4.428, amended on March 14, 2022,[7] is consistent with *Ortiz*, in interpreting section 1385.  Rule 4.428 states:

"(c) Dismissing enhancements under section 1385(c)

"(1) The court shall exercise the discretion to dismiss an enhancement if it is in the furtherance of justice to do so, unless the dismissal is prohibited by initiative statute.

"(2) In exercising its discretion under section 1385(c), the court must consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in section 1385(c) are present.

"(A) Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety.

"(B) The circumstances listed in 1385(c) are not exclusive.

---

[7] Undesignated rule references are to the California Rules of Court.

"(C) 'Endanger public safety' means there is a likelihood that the dismissal of the enhancement would result in physical injury or other serious danger to others." (Cal. Rules of Court, rule 4.428, (b)(1)-(2).)

We conclude that under section 1385 the trial court must exercise its discretion in weighing both mitigating and aggravating factors when determining if dismissal of an enhancement is in the furtherance of justice, giving great weight to the mitigating circumstances listed in section 1385, subdivision (c)(2). (*Mazur*, *supra*, 97 Cal.App.5th at p. 445, review granted; *Anderson*, *supra*, 88 Cal.App.5th at pp. 239-240, review granted; *Lipscomb*, *supra*, 87 Cal.App.5th at pp. 17-21; *Walker*, *supra*, 86 Cal.App.5th at pp. 395-398, review granted.) As we concluded in *People v. Mendoza*, *supra*, 88 Cal.App.5th at page 296, "The 'shall be dismissed' language in section 1385[, subdivision] (c)(2)(C), like the language of all of the listed mitigating circumstances, applies only if the court does *not* find that dismissal of the enhancement would endanger public safety." (*Id*. at p. 296; see also *Ortiz*, *supra*, 87 Cal.App.5th at p. 1093, review granted ["the specification of mandatory factors did not displace the trial court's obligation to exercise discretion in assessing whether dismissal is 'in furtherance of justice'"]; *Anderson*, *supra*, at pp. 238-241; *Walker*, *supra*, at pp. 396-398.)

Thus, under section 1385, subdivision (c), "the trial court has discretion to dismiss sentencing enhancements; certain circumstances weigh greatly in favor of dismissal; and a finding of danger to public safety can overcome the circumstances in favor of dismissal." (*Anderson*, *supra*, 88 Cal.App.5th at p. 239, review granted.) Subdivision

14

(c)(2)(B) and (C) of section 1385, does not mandate that the court dismiss one or more of defendant's enhancements.

D. *Denial of Dismissal of Enhancements Was Not an Abuse of Discretion*

Based on a review of the record, we conclude that under section 1385, subdivision (c), the trial court did not abuse its discretion by declining to dismiss defendant's firearm and GBI enhancements, because there was substantial evidence that dismissal of the enhancements would endanger public safety. (See *Mazur*, *supra*, 97 Cal.App.5th at p. 445, review granted; *People v. Mendoza*, *supra*, 88 Cal.App.5th at p. 297; *Lipscomb*, *supra*, 87 Cal.App.5th at pp. 20-21.)

Defendant requested that the court exercise its discretion under section 1385 and strike one or more of his enhancements. Defendant argued the enhancements should be stricken on the grounds "(1) multiple enhancements were alleged [(§ 1385, subd. (c)(2)(B))]; (2) application of enhancements resulted in a sentence of over 20 years [(§ 1385, subd. (c)(2)(C))]; (3) the enhancement is based on a prior conviction over five years old [(§ 1385, subd. (c)(2)(H))]."

The People argued that the aggravating factors that supported denial of dismissal of the enhancements outweighed any mitigating factors. The People asserted that there were no mitigating factors, other than that there was a significant period of time between the charged offenses and defendant's nickel prior. But as to this mitigating factor, the People argue defendant continued to commit crimes and there was no pivotal point demonstrating defendant had reformed and was no longer a danger to public safety.

15

Defendant argued the lengthy period of time between offenses showed he had reformed. However, defense counsel added that "[t]rue, leading into this offense, there did seem to be some backsliding and coming into problems," and "no doubt the allegations and the convictions in this case were serious and violent." Arguing defendant was not a danger to public safety, defense counsel asserted that the charged offense was a "very special circumstance," in which what happened "was incredibly violent, but nonetheless would show an aberration from even the prior convictions that he suffered."

During a presentencing interview in 2020, defendant admitted he possessed a firearm when he committed the charged offenses, but said he had no regrets. The probation officer reported: "'Despite his criminal record, he believes strongly that he should [have] the right to bear arms and that he's glad he has a firearm.'" Defendant indicated that, even though he was a felon prohibited from possessing a gun, he nevertheless believed he had a right to bear arms and would not be deterred. He also acknowledged he continued to use methamphetamine and marijuana prior to this matter, and denied it interfered with his ability to live a law-abiding lifestyle.

In addition, as argued by the People during sentencing, several aggravating factors under rule 4.421 supported not dismissing defendant's enhancements under section 1385. The underlying crime "involved great violence, great bodily harm, threat of great bodily harm, or other acts disclosing a high degree of cruelty, viciousness, or callousness." (Rule 4.421(a)(1).) The jury found true the GBI enhancement, and a medical expert testified the victim's lung was punctured, and there was a bullet hole in his heart

16

chamber. There was evidence that the victim would not have survived but for the emergency surgery that saved his life. Also, defendant was armed when he committed the crime and "engaged in violent conduct that indicates a serious danger to society." (Rule 4.421(a)(2), (b)(1).) Defendant shot the victim in the back as he was fleeing down the inside stairs, and fired at him again as the victim descended the outside stairs.

Defendant's criminal history further supports a reasonable finding defendant was a danger to society. (Rule 4.421(b)(2).) Defendant had four prior convictions, of arguably increasing seriousness, including receiving stolen property, theft, and unlawful driving or taking of a vehicle, first-degree burglary, and sale or transportation of controlled substances in violation of Health & Safety Code section 11379. In addition, defendant reportedly "'was on probation, mandatory supervision, post-release community supervision, or parole'" when he committed the Health & Safety Code section 11379 offense. (Rule 4.421(b)(4).)

When denying defendant's request to dismiss his enhancements under section 1385, subdivision (c)(2), the court explained that when exercising its discretion under section 1385, it was not required to give conclusive weight to the mitigating circumstances. The court said it reviewed the enhancements, specifically the firearm use enhancement, and "weighed the factors of aggravation, that the defendant was armed with and used firearm at the time of the commission of the crime; that he was on

mandatory supervision at the time he committed this offense for HS11378,[8] possession of a controlled substance. He was in violation of–and, also, a bench warrant was issued for his arrest at the time of this offense; that he showed no remorse for his actions. He believed that he had a constitutional right to possess the firearm despite being a convicted felon." The court further stated that it considered the mitigating allegation that defendant's criminal conduct was partially excusable, although not a defense, and that there were multiple enhancements from a single case. Based on weighing these considerations, the court reimposed the firearm use enhancement.

The court stated it also reimposed the GBI enhancement based on these same aggravating and mitigating factors. In particular, the charged crime involved great bodily harm in that the victim was shot, with the bullet nearly striking the victim's heart. The court noted that that, had the bullet struck the victim's heart, the victim likely would have been killed. The court further stated that defendant engaged in violent conduct indicating he is a serious danger to society. He has prior convictions as an adult, and his convictions were increasing in seriousness. However, weighing the aggravating and mitigating factors and circumstances, the court dismissed the nickel prior based on the mitigating factors and circumstance that the victim initiated the fight, the enhancements were imposed in a single case, and the nickel prior enhancement was more than five years old (§ 1385, subds. (c)(2)(H)).

---

[8] The record indicates defendant committed a Health & Safety section 11379 violation, not a "HS11378" violation.

It can be reasonably inferred from the record that the court denied dismissal of the gun use and GBI enhancements because dismissal would "endanger public safety." The court noted defendant committed the charged offenses using a firearm while on mandatory supervision with a bench warrant issued for his arrest. He, nevertheless, flouted the law because he believed "he had a constitutional right to possess the firearm despite being a convicted felon." Also, the trial court stated that defendant "was engaged in violent conduct that indicates serious danger to society," and noted that his criminal conduct was "increasing in seriousness." The trial court's statements indicate it reasonably found there was a likelihood that dismissal of the two enhancements would result in physical injury or other serious danger to others. We therefore conclude the record demonstrates that the trial court implicitly and reasonably found that dismissal of the enhancements would endanger public safety, and the court therefore did not abuse its discretion in denying dismissal of the GBI and gun use enhancements.

Defendant argues that when considering his request to dismiss the gun use enhancement, the trial court improperly relied on an element of the gun use enhancement as an aggravating factor. The court stated it relied on the factor of defendant being armed when committing the charged offenses. Even if error, it was harmless as it is not reasonably probable defendant would have obtained a more favorable outcome had there not been such error. The trial court stated it relied on additional aggravating factors that demonstrated that defendant was a danger to society and there were only two minor mitigating factors: (1) there was a significant period of time between the priors and

19

charged offenses and (2) defendant's criminal conduct was partially excusable because he did not instigate the fight.

For this same reason, defendant's IAC argument that his defense attorney failed to raise the objection also lacks merit because of a lack of prejudice. The court stated it also relied on the factors that defendant was on mandatory supervision when he committed the charged offenses, he had an outstanding warrant for his arrest at that time, he showed no remorse for his actions, and he "believed that he had a constitutional right to possess the firearm despite being a convicted felon." These additional factors supported the trial court's implicit finding that defendant was a danger to the public and therefore his sentence should not be shortened by dismissing his gun use and GBI enhancements. Even if defense counsel had objected to the court relying on gun possession and use, it is not reasonably probable that the trial court would have found it in the interest of justice to strike the firearm use enhancement. (*People v. Moye* (2009) 47 Cal.4th 537, 556; *People v. Ocegueda* (2016) 247 Cal.App.4th 1393, 1407, fn. 4.)

Defendant also argues that the trial court erred in relying on the aggravating factor of lack of remorse. He asserts that, although the jury found defendant did not act in lawful self-defense, the evidence presented a relatively close case on whether he shot the victim in lawful self-defense. We disagree that relying on a lack of remorse was improper.

In *In re Shaputis* (2011) 53 Cal.4th 192, 228, the petitioner who had been denied parole by the Board of Parole Hearings (BPH), filed a petition for writ of habeas corpus.

20

The BPH's decision was based not only on the petitioner's lack of insight, but also on the nature of the murder and the petitioner's long history of domestic violence. (*Shaputis*, *supra*, at p. 216.) The *Shaputis* court noted that an inmate's degree of insight is a proper consideration in determining whether an inmate poses a current threat to public safety (*id*. at p. 199), and that the petitioner's "level of insight and acceptance of responsibility, remains a crucial aspect of the determination whether he may safely be paroled." (*Id*. at p. 217.) The court stated that it had "expressly recognized that the presence or absence of insight is a significant factor in determining whether there is a 'rational nexus' between the inmate's dangerous past behavior and the threat the inmate currently poses to public safety." (*Id*. at p. 218.)

Although lack of remorse is not specifically designated as a relevant aggravating factor in rule 4.421, it is listed as a criterion affecting probation in rule 4.414 (b)(7). "Where a defendant acknowledges guilt, but shows no remorse, he may be expected to repeat the criminal conduct under similar circumstances. . . . In such a case, lack of remorse may be applied to aggravate as an additional relevant factor pursuant to rule 408 [renumbered rule 4.408]." (*People v. Key* (1984) 153 Cal.App.3d 888, 900-901.)

Here, defendant admitted he possessed a gun and shot the victim, but argued he acted in self-defense. The jury rejected the argument and found him guilty of possession of a firearm and assault with a firearm. There was substantial evidence that defendant shot the victim in the back while fleeing. In addition, defendant conceded he was aware that it was unlawful for him to possess a gun and ammunition. Under these

21

circumstances, the trial court's reliance on defendant's lack of remorse as an aggravating factor was proper. The trial court could reasonably find that, because of defendant's lack of remorse, he did not have sufficient insight and acceptance of responsibility for his criminal conduct, such that he was likely to commit similar conduct in the future, particularly if provoked.

Defendant indicated that he believed he had a right to carry a gun, regardless of the law prohibiting such possession, and this disregard for the law led to defendant shooting the victim when provoked. Defendant demonstrated he had no remorse for shooting the victim in the back or for possessing the gun unlawfully. We conclude that under these circumstances there was no error in the trial court relying on lack of remorse as an aggravating factor, and denying dismissal of defendant's gun use enhancement.

Defendant cites *People v. Williams* (1998) 19 Cal.App.5th 1057, for the proposition that, when considering whether he would pose a danger to public safety, the trial court failed to consider his age of 58 years, at sentencing, and his probable date of release. Not only is *Williams* distinguishable but, in addition, it cannot be assumed from the record that the trial court did not take into account defendant's age and release date. (*People v. Jones* (2022) 86 Cal.App.5th 1076, 1092 ["In the usual case, the fact that a court did not specifically mention certain evidence does not mean that the court 'ignored' that evidence."].)

Here, dismissing the two enhancements would have reduced defendant's sentence significantly from 20 years, four months, to 13 years, four months. Nothing in the record

suggests the trial court overlooked defendant's age and date of release when denying his request to dismiss the gun use and GBI enhancements. Under the totality of the circumstances in this case, we thus conclude the court did not abuse its discretion in denying defendant's request to dismiss these two enhancements.

V.

RENEWAL OF *ROMERO* MOTION

During resentencing on September 16, 2022, defendant requested the trial court to reconsider his *Romero* motion to strike his 30-year-old burglary conviction in light of the new sentencing laws, which amended section 1385. The original motion was heard and denied, and this court affirmed the ruling in defendant's first appeal. During resentencing, the trial court stated it would not reconsider defendant's *Romero* motion because it was not before the court and this court had previously affirmed the trial court's ruling on the *Romero* motion. Defendant argues that during resentencing, he was entitled to a full re-sentencing, including reconsideration of his *Romero* motion. The People agree that a limited remand to allow the trial court to reconsider defendant's *Romero* motion is appropriate.

We agree the trial court erred in not reconsidering defendant's *Romero* motion. (*People v. Buycks* (2018) 5 Cal.5th 857, 893 ["when part of a sentence is stricken on review, on remand for resentencing 'a full resentencing as to all counts is appropriate, so the trial court can exercise its sentencing discretion in light of the changed circumstances'"]; *People v. Navarro* (2007) 40 Cal.4th 668, 681.) The record shows that

23

during resentencing, the trial court was unaware it had discretion to reconsider defendant's *Romero* motion and therefore denied defendant's request to do so. The record also does not clearly indicate that the trial court would have reached the same conclusion had it reconsidered the motion. The matter must thus be remanded for the purpose of allowing the trial court to reconsider the motion. If the *Romero* motion is granted during resentencing, "the full resentencing rule, which 'allows a court to revisit all prior sentencing decisions when resentencing a defendant' [citation], applies." (*People v. Henderson* (2022) 14 Cal.5th 34, 56.)

## VI.

## DISPOSITION

Defendant's sentence is reversed as to the trial court's denial of defendant's request to reconsider his *Romero* motion, and the matter is remanded for that purpose. The judgment of conviction and sentence are affirmed in all other regards.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON

J.

We concur:

MILLER
Acting P. J.

RAPHAEL
J.